The Atlas Engine Works *v.* Randall.

Filed Feb. 12, 1885.

---

No. 11,742.

## THE ATLAS ENGINE WORKS *v.* RANDALL.

MASTER AND SERVANT.—*Inexperienced Servant.—Dangerous Employment.— Caution.*—It is the duty of a master not to expose an inexperienced servant to a dangerous service without giving him warning, or such instruction as will enable him to avoid injury, unless both the danger and the means of avoiding it are apparent.

SAME.—*Alter Ego. – Fellow Servants.*—If the master subjects the servant to the command of another, without information or caution with respect to such obligations as the master owes, the other stands in the master's place, notwithstanding the two servants are, as regards the common employment, fellow servants. *Aliter*, if he defines the duty and authority of each with respect to the other, or gives instructions covering the subject of their employment, so as to give no authority to the one over the other, or so as to point out the danger of the service and the means of avoiding it.

SAME.—*Equal Knowledge of Danger.—Negligence.*—Where both the master and the servant have equal knowledge of the danger of the service required and of the means of avoiding it, and the servant, while engaged in the performance of the work he is set to do, is injured by reason of his own inattention and negligence, the master is not liable.

CONTRIBUTORY NEGLIGENCE.— *Minor.*—Contributory negligence on the part of a minor will defeat his right to recover for an injury, as in the case of an adult.

From the Marion Superior Court.

*B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellant.

*H. N. Spaan,* for appellee.

MITCHELL, J.—This action was brought by Louis E. Randall to recover damages for an injury sustained by him while in the service of the Atlas Engine Works.

The evidence tended to show that the appellee was within a few days of nineteen years old at the time he engaged in the ap-

pellant's service; that he was an intelligent, active young man, having the ordinary experience and development of persons of that age; that he had worked some about a blacksmith shop, at farming and bridge building, but had no particular experience with machinery such as that used in the appellant's shops.

He was employed by the superintendent of the appellant's boiler department as a helper to one Smith Walker, whose business was to attend to the operation of a certain machine called a " flange punch," which was a machine used for drilling or punching holes in boiler iron. The evidence tended to show that he was subject to the direction of Walker, so far as receiving from him instructions as to his duties in connection with the operations of this machine. This machine consisted of a heavy iron frame four or five feet in length, and about twelve or fourteen inches wide, and of suitable height, and had, as part of its gearing, to give motion to the punch which was adjusted to it, two cog-wheels indenting into each other, the larger of which was forty-two inches in diameter and the smaller seven inches. These were operated by a belt passing over a pulley connected with the machine, thence passing over a pulley on a line-shaft attached to the building. When in motion, the evidence tended to show that the larger cog-wheel made from forty to fifty revolutions per minute, and the smaller one about two hundred, and that the point of indentation of the two wheels was about nine inches from the top of the frame, and from three to five inches out from the side of the body or frame.

The plaintiff testified that on the fifth day after he entered the defendant's service, he was directed by Walker to procure some "waste" from the tool-room, and, during the temporary absence of Walker from the machine, wipe off the top of the frame, while the wheels were in motion. He also testified that he was not cautioned by Walker, or any one else, concerning the danger of getting his hands or person into the cog-wheels, and that he had no directions how to pre-

vent his hands from becoming involved in these wheels while wiping off the top of the frame. On the other hand, Walker testified that he was temporarily called away from his post by the superintendent; that he gave the appellee no directions to wipe off the machine at all; that there was no particular necessity for wiping it off at that time; and that he had on several occasions before that cautioned him not to get his "hands in the cog-wheels," and not to go too close to the wheels.

While engaged in wiping off the top of the frame of this machine, the appellee's hand was caught between the cog-wheels, and was so crushed and lacerated that the loss of all, save the thumb and one finger, resulted.

It was shown that after the injury the cog-wheels were covered, or "boxed," as it is termed, and that the danger in leaving the wheels exposed was not so much to persons at work with or about the machine, as to persons passing by it.

The injury appears to have occurred in this way: While the appellee was wiping off the top of the machine, instead of holding the "waste" compactly in his hand, he allowed shreds or ends of it to dangle below his hand, and the ends so hanging down becoming involved in the cog-wheels, his hand was drawn into the wheels and injured as described.

There was a general verdict for the plaintiff below, and with the general verdict the jury returned answers to special interrogatories.

By these answers the jury returned that the plaintiff and Smith Walker were co-employees, and that he was a young man about nineteen years old at the time of the injury, of average intelligence and capacity, and that the danger from the cog-wheels was apparent to any person of ordinary intelligence and capacity.

Over motions for a new trial, and for judgment on the special findings of the jury, the plaintiff had judgment.

Counsel for appellant contend that there is a fatal variance in the proof as to some of the essential averments in the complaint.

It is averred in the complaint that the machine at which the plaintiff was injured was defective in construction, in that it required frequent cleaning, and could not be stopped for that purpose, but had to be cleaned while in motion; that the cog-wheels, being exposed and without covering, were a source of constant danger to those operating the machine, and that the defendant, with full knowledge of the plaintiff's youth and inexperience, " directed, ordered and compelled " him to clean it while in motion.

It is insisted that there was no evidence whatever showing that the defendant ordered, directed or compelled the plaintiff to clean the machine while it was in motion. From the evidence given, the jury may have found that Randall was employed by the superintendent of the boiler department, and that he was subject to Walker's orders. There is also evidence from which it may have been found that Walker directed him to wipe off the top of the machine while it was in motion, without giving him any caution with respect to the danger of so doing.

The argument of counsel is that Walker and Randall were fellow servants engaged in the same general employment, and conceding that Walker did order or direct him as claimed, without giving him notice or proper caution, yet, as this was but the negligence or fault of a fellow servant, it is said this can not be imputed to the master. So far as the service in which they were engaged pertained to their common employment, in operating the machine, they were beyond doubt fellow servants. If either sustained an injury from the negligence of the other, while so engaged, the master is not liable. It is claimed, however, that the appellee was put under subjection to Walker, and that he was directed to obey his orders, and that he was not cautioned of the danger of the particular service required of him when he received the injury.

One of the well recognized duties of a master is not to expose an inexperienced servant, at whose hands he requires a dangerous service, to such danger without giving him warn-

The Atlas Engine Works *v.* Randall.

ing.   He must also give him such instruction as will enable him to avoid injury, unless both the danger and the means of avoiding it while he is performing the service required are apparent.   These are obligations of the master, and he can not exempt himself from liability by delegating his power to command the servant to another upon whom the obligation to instruct and caution is also imposed.

If the agent or servant upon whom the power to command is given exercises the power, and fails to discharge the obligation, to the hurt of the servant who is without fault, the failure is that of the master, and he must respond.

The master having subjected the servant to the command of another without information or caution with respect to all such obligations as the master owes, the other stands in the master's place, and this is so notwithstanding the two servants are, as regards the common employment, fellow servants.

If the master has by general or special instructions defined the duty and authority of each with respect to the other, or given instructions covering the subject of their employment, so as to give no authority to the one over the other, or so as to point out the danger of the service and the means of avoiding such danger, the rule can have no application. *Mitchell* v. *Robinson,* 80 Ind. 281 (41 Am. R. 812); *Indiana Car Co.* v. *Parker, ante,* p. 181; *Railroad Co.* v. *Fort,* 17 Wall. 553; *Lalor* v. *Chicago, etc., R. R. Co.,* 52 Ill. 401 (4 Am. R. 616); *Brabbits* v. *Chicago, etc., R. W. Co.,* 38 Wis. 289; *King* v. *Ohio, etc., R. R. Co.,* 8 Am. & Eng. R. R. Cases, 119; *Shanny* v. *Androscoggin Mills,* 66 Maine, 420; *Baxter* v. *Roberts,* 44 Cal. 187 (13 Am. R. 160); *Atchison, etc., R. R. Co.* v. *Holt,* 29 Kan. 149; Cooley Torts, 553 to 563, and notes; 2 Thompson Neg. 976, 978, 979, 1028 to 1033.

As applicable to the facts and circumstances developed in this case, two things were material to be proved in order to fix the liability of the appellant: 1. That the danger to which the appellee was exposed, and which was the proximate cause of the injury, was one which was known, or might reasonably

have been apprehended, by the appellant. 2. That such danger was one which, by the exercise of the faculties of the appellee, when directed to the thing he was commanded to do, was not open to his observation and apprehension, assuming that he was giving care and attention to the work required of him. Upon both of these propositions we think the proof falls short of making out the case.

The proximate cause of the injury grew out of the fact that the appellee, in wiping off the top of the machine, needlessly held the waste in his hand in such manner as to permit the ends or parts of it to hang down about nine inches below, and from three to five inches out from the top line of the frame, and by that means to become involved in the revolving cog-wheels. Conceding that Walker directed him to wipe off the machine with waste, and that he gave him no caution, about which there is serious dispute, yet he could not know or reasonably apprehend that he would do it in the manner described. The act of the appellee in permitting the substance employed in wiping the machine to hang down in the manner stated, presumably under his immediate observation, was a thing, under the circumstances, so highly improper and unnecessary in any possible contingency, that the foreman could not reasonably have anticipated that it might occur. A reasonably prudent and cautious foreman might well believe that the work could be safely done, if done in a manner which the appearances and exigencies of the situation itself would suggest to a person nineteen years old, and he had a right to rely upon the fact that what he directed to be done would be done with due regard to all the hazards which were open to the perception, and which must lie immediately under the eyesight of the appellee, if he was giving attention to the very thing which he was directed to do. Ordinary, usual or probable consequences resulting from attentive application to the service demanded, the foreman was bound to anticipate and caution against, but he was not bound to anticipate extraordinary, unusual and improbable occurrences which involved inattention

on the part of the appellee.    And so as to the other requisite to the appellant's liability, it seems clear to us, upon the appellee's own statement, that if he had been giving attention to what he was doing, the injury would not have occurred.

Every hypothesis upon which the facts can be considered fails to account for the accident and resulting injury, except that which assumes that the appellee was not giving attention to his hands and the manner in which the waste was held.

As was said by COOLEY, J., in the case of *McGinnis* v. *Canada Southern Bridge Co.*, 8 Am. & Eng. R. R. Cases, 135: "It was thus made to appear by his own examination that he was not sent into unknown dangers, and that he was not exposed to risks which he, through immaturity or for any other reason, failed to comprehend."

Contributory negligence on the part of a minor, when it is established, will defeat his right to recover for an injury, precisely as in the case of an adult. *Chicago, etc., R. W. Co.* v. *Harney*, 28 Ind. 28; *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191; *Brazil, etc., Co.* v. *Cain*, 98 Ind. 282. The case is plainly distinguishable from *Hill* v. *Gust*, 55 Ind. 45, and the case of *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572 (3 Am. R. 506), cited therein.

In the first case, a boy was compelled to drive and manage a wild, fractious horse, on a high embankment between two trains of steam cars, and while in that situation he was injured by the horse getting beyond his control, and it was held in that as in the case cited and relied on, that the mere fact that he could have seen that such place was dangerous, by exercising his faculty of sight, was not sufficient to defeat his right to recover.    In that case, the minor was compelled to go into a situation, highly dangerous, charged with the management of a horse whose control was beyond his strength. No degree of attention or strength at his command was of any avail.    The parallel between that case and this is lost as soon as the two are stated.    And so in the Massachusetts case, in which a boy, fourteen years old, was injured by com-

ing in contact with one machine which was left unguarded, and in such close proximity to another at which he was employed, that in doing his work in the manner in which he was instructed to do it, his hand was brought in contact with the unguarded machine and injured. In that case the attention of the boy was necessarily directed to the machine at which he was engaged, and not to the unguarded machine which inflicted the injury. While here the very duty which the appellee was required to perform was such that every moment his attention was given to it the danger of the situation was apparent, and the means of evading it simply his own volition. If the attention of the appellee had been, as in the Massachusetts case, withdrawn from the source of danger by the requirements of his employment, the case would involve considerations which are conspicuously absent. For a case in all respects parallel, see *Shanny* v. *Androscoggin. Mills*, 66 Maine, 420.

Where an inexperienced servant is required to perform a hazardous service, in the performance of which extraordinary caution or peculiar skill is required, in order to enable him to avoid dangers which may be apparent, it may be a question for a jury to determine whether, under all the circumstances, the master gave sufficient caution of the danger or adequate information of the means necessary to avoid it, or whether the servant was guilty of contributory negligence in not avoiding it. But the evidence in this record fails to make a case of that character. So far as appears from the evidence in this case, no extraordinary caution or peculiar skill was necessary to avoid the injury sustained. Nothing was necessary except that the appellee should give attention to his hands, over which he had complete control.

The conclusion at which we have arrived is, that upon the facts as presented by the evidence in the record, this must be held to be a case in which both parties had equal knowledge of the danger of the service required, and of the means of avoiding it. Both had equal knowledge of the consequences

which would result if the appellee allowed his hands to become involved in the cog-wheels, and both knew that the only means necessary to avoid that result were nothing more than that the appellee should give attention to the work which he was set to do. The appellant had a right to expect such attention.

It is suggested that upon the special findings of the jury judgment should have been rendered for the appellant notwithstanding the general verdict. This view does not seem to be seriously pressed, and while there might be some difficulty in sustaining the general verdict as against the special findings, yet we think if it could be said that it was in all other respects sustained by the evidence, there may be some theory upon which it might stand notwithstanding the special findings.

Some instructions were asked and refused, and some given by the court, upon which error is predicated, but it is believed no useful purpose can be subserved by prolonging this opinion with a particular examination of the instructions given or refused.

Judgment reversed, with costs.

Filed March 11, 1885.