The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Adams.

---

No. 11,378.

THE PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY *v.* ADAMS.

COMPLAINT.—*Railroad.*—*Negligence.* — *Motion to Make More Certain.*—Where the complaint in an action against a railroad company for personal injury to plaintiff while in its employ, resulting from the alleged negligence of the defendant and its employees, charges that the plaintiff was ordered to perform certain hazardous work with which he was unacquainted, by "his superior in rank in the service" of such defendant,

The Pittsburgh, Cincinnati and St. Louis Railway Company v. Adams.

whereby, etc., the same is not sufficiently specific, and a motion to require the plaintiff to make his complaint more certain, so as to show the position in the defendant's service, and the relation to both defendant and plaintiff, occupied by the persons alleged to have given such orders to him, should be sustained.

SPECIAL VERDICT.—A special verdict should be limited to the case as made by the pleadings, should find all the facts proven under the issues, and should not embody or state conclusions of law.

SAME.—Conclusions of Law, etc.— Venire De Novo.—If a special verdict include findings of evidence, conclusions of law and matters outside the issues, such findings will be disregarded; still, if such verdict, stripped of such superfluities, is yet sufficient to lead up to and support a judgment either way under the issues, a motion for a venire de novo will be overruled.

MASTER AND SERVANT.—Contract of Hiring.—Implied Undertaking of Master. —Co-employee.— Vice-Principal.—As a general rule, in the contract of hiring, there is an implied undertaking upon the part of the master that he will use all reasonable care to furnish safe premises, machinery and appliances for conducting the business safely, and that he will use all reasonable care to furnish competent and prudent co-employees; and when the master has kept and performed this implied undertaking, the servant can not recover from him for injuries resulting from the business, or the negligence of such co-employees, however dangerous the business; and this rule obtains, regardless of the fact that one employee may be the superior in rank to others in the same general employment, unless he occupies the position of vice-principal.

SAME.—Implied Undertaking on Part of Servant.—In such contract of hiring, there is an implied undertaking on the part of the servant that he will exercise reasonable care to avoid injury, and that he assumes all ordinary risks, incident to the business, and all risks from the negligence of co-employees.

SAME.—Minors.—These general rules apply to minors.

SAME.—Master's Liability where Servant is Ordered to do Hazardous Work Outside of Contract.—The servant's implied assumption of risks, which accompanies and is a part of the contract of hiring, is confined to the particular work and class of work for which he is employed, and if the master orders him to work temporarily in another department of the general business, where the work is of such a different nature and character that it can not be said to be within the scope of the employment, and where he is associated with a different class of employees, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work and the risk of negligence on the part of such employees.

SAME.—If, however, the servant, voluntarily and without directions from the master, goes into hazardous work outside of his contract of hiring,

The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Adams.

he puts himself beyond the protection of the master's implied undertaking.

SAME.—*Defective Machinery, etc.—Knowledge.—Diligence.*—If the servant claim damages from the master for injuries received on account of defective premises, buildings, machinery or appliances, he must allege and prove that the defect or the unfitness, which caused the injury, was known to the master, or was such as with reasonable diligence and attention to his business he ought to have known.

SAME.—*Latent Defects and Dangers.*—In all cases the master is bound to disclose to the servant latent defects and dangers, of which he has knowledge, or of which he ought to have knowledge by the exercise of reasonable attention, care and diligence, and of which the servant has no knowledge, and would not discover by the exercise of reasonable care.

SAME.—*Implied Representations of Servant.—Railroad.*—When a person of apparently sufficient age, physical ability and mental caliber to perform the service, seeks an employment at the hands of a railway company, or other master, he will be held to an implied representation that he is competent to perform the duties of the position he seeks, and competent to apprehend and avoid all dangers that may be discovered by the exercise of ordinary care and prudence.

SAME.—*Hazardous Work.—Orders by Co-employee.*—If a servant, upon the orders of a co-employee, employed in 'the same work with him, and without authority from the master to order and control the servant's work and movements, leaves his work which in the original contract he is hired to perform, and engages in hazardous work, he can not make the master respond in damages for the consequences.

SAME.—*Contributory Negligence.*—In no case will the master be held as upon a warranty against the negligence of the servant who brings injury upon himself which he might have avoided by the exercise of reasonable care and prudence.

From the Miami Circuit Court.

*N. O. Ross,* for appellant.

*J. L. Farrar, J. Farrar, W. C. Farrar, A. C. Harris* and *W. H. Calkins,* for appellee.

ZOLLARS, J.—Appellee brought this action to recover damages resulting from a personal injury received upon appellant's road. The following, partly a summary, and partly a copy, is as much of the complaint as needs to be set out, viz.:

In 1881, appellee, then under twenty-one years of age, was in the employ of appellant as a section hand, and in no other or

different capacity. While thus employed, he was "ordered by Patrick Clary, a person standing towards plaintiff in the relation of superior in the employ of defendant," to get upon and go with a construction train, and perform such service as might be required of him. The construction train was sent out for the purpose of gathering up iron along the track. "In obedience to said order, though totally unacquainted with the business of coupling cars, braking, or the general method or order of running trains, * * except as a section hand," appellee went upon the train. There were not upon the train the usual and necessary number of brakemen to manage and control it. While upon the train, appellee was "ordered by said Patrick Clary, his superior in authority in defendant's employ as aforesaid, to act as brakeman at the rear end of the train, a business for which he was not hired, and of and about which he knew nothing." He obeyed the order, and while so acting as brakeman it became necessary to couple other cars to the rear end of the train. Being at the rear end of the train, and after it was upon a side-track to let other trains pass, he "was ordered by Thomas Courtney, in the employ of defendant, and standing toward plaintiff in the relation of superior, to do said coupling. While performing said coupling as ordered by his said superior in service, and as in duty bound to do, without fault or negligence on his part, the bottom of plaintiff's pantaloons upon his right leg was pierced by a sharp piece of iron negligently left by defendant projecting from the rail of defendant's said road, which defendant at said place had negligently and carelessly suffered to get and remain out of repair; said iron, after passing through the leg of plaintiff's pantaloons, entered the shoe upon plaintiff's right foot and held him fast, and before he could extricate his * * foot, and without fault or negligence upon his part, the wheels of the train and cars he was coupling ran upon and over the said right foot of plaintiff, crushing, mangling and bruising said foot and the ankle, rendering amputation necessary," etc.

The foregoing statement is an abbreviation of the second paragraph of the complaint. The first paragraph is substantially the same, except that the coupling is alleged to have been a duty resulting from the position of brakeman, and there is no averment that appellee received specific orders from any one to make the coupling.

Appellant moved for a rule upon appellee to make his complaint more specific and certain, so as to show the position in its service, and the relation to it and to appellee, occupied by Clary and Courtney, the persons alleged to have given the orders to appellee. We shall see during the course of this opinion that this motion should have been sustained.

It is assigned as error that the court below erred in overruling appellant's demurrer to the complaint.

The contention on the part of appellant's counsel, amongst other things, is, that it is not alleged that appellant knew, or with reasonable care might have known, of the unsafe condition of the rail, and that it is not alleged that appellee did not know, or with reasonable care might not have known, that the rail was in an unsafe condition. Upon the hypothesis that the gravamen of the action is alone the negligence of appellant in connection with the rail, and that to constitute negligence in that regard it is essential that appellant knew, or with reasonable care might have known, of its unsafe condition, still, the general averment that appellant negligently left the sliver or splint projecting from the rail, is sufficient under many decisions of this court. *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160, and cases there cited. And so, too, in relation to the general averment that appellee was without fault or negligence.

Whether or not these former rulings are in entire consonance with the provisions of the code upon the subject of pleading we need not now inquire. They have been so long adhered to as to become the settled law of the State.

The jury returned the following special verdict, upon which

judgment for $7,000 was rendered against appellant and in favor of appellee, viz.:

" The defendant, the Pittsburgh, Cincinnati and St Louis Railway Company, was, on the 9th day of June, 1881, and long previous thereto, a corporation organized and doing business under the laws of the State of Indiana, and operating a line of railroad through the counties of Grant and Miami in said State of Indiana.

" 2. That, on June 9th, 1881, plaintiff was a minor under the age of twenty-one years, over the age of twenty years, and was employed by the defendant as a section hand to work repairing the track of defendant's said railroad.

" 3. Plaintiff was so employed to work for defendant without the consent of his mother.

" 4. When plaintiff was so hired to work as a section hand on defendant's road, his father was not living.

" 5. On June 9th, 1881, plaintiff was ordered by defendant's section boss having charge of the section from Bunker Hill to McGrawsville, one Patrick Clary, to go upon defendant's construction train at Bunker Hill, Indiana, and plaintiff did go upon said train as ordered.

" 6. Plaintiff went from Bunker Hill on said day, under direction of defendant's agents and employees, to Upland, in Grant county, Indiana.

" 7. Plaintiff, previous to June 9th, 1881, had never performed the duties of brakeman, and he had never coupled cars attached to an engine.

" 8. Plaintiff, while so on said train at Upland, on June 9th, 1881, was ordered by defendant's agent and plaintiff's superior in authority, to go to the rear of said construction train and act as brakeman thereon, and plaintiff obeyed said order.

" 9. While so on the rear end of said train as brakeman, it was plaintiff's duty to couple cars of said construction train on which he was working.

" 10. Plaintiff was ordered while at Upland by an agent

of defendant, and a superior in authority to plaintiff, to couple some cars to said construction train. He attempted to couple said cars, and while so attempting to couple said cars he was injured by the cars of said construction train, and his right leg was so badly crushed that amputation became and was necessary.

"11. At Upland, on said June 9th, 1881, while so attempting to couple cars on said train upon which plaintiff was working, and when he received said injury, he was, when so injured, exercising reasonable care in coupling said cars.

"12. That plaintiff, on said day, while so as aforesaid attempting to couple said cars, exercised such care as might reasonably have been expected of him, considering his youth and inexperience.

"13. While so attempting to couple said cars at Upland, on said 9th day of June, 1881, plaintiff's foot was caught by an iron sliver or splinter on one of the rails of defendant's switch, and held there until struck by the car wheel of said construction train, and his leg was then and there run over by said car wheel and crushed, so that amputation became and was necessary, and plaintiff thereby lost his right leg.

"14. We further find, that while the train upon which plaintiff was ordered by defendant to go, and did go to Upland, was standing upon the side-track, a part of defendant's railway at Upland, in Grant county, Indiana, on June 9th, 1881, the plaintiff was ordered, by an employee of defendant and superior to plaintiff in authority on said railway, to make the coupling of certain cars attached to the locomotive of the train on which plaintiff was working; that in attempting to obey said order to couple said cars, without fault or negligence on his part, the said cars ran upon and over his right leg, and so injured the same that amputation became necessary; and we further find that the defendant was on the cars and train upon which plaintiff was working at said time at Upland when he so lost his leg, in the person of Andrew Mertens, supervisor of and on said road. We do further find,

that at the time plaintiff was ordered to go on defendant's construction train at Bunker Hill, on June 9th, 1881, he was under the age of twenty-one years and over twenty years; that he had no experience whatever in railroading, except as a section hand; that defendant ordered him to couple cars at Upland on said day, and that he did make the attempt as ordered, and, without fault on his part, was injured and lost his leg thereby, and that neither defendant nor any one of her employees had explained, or did explain, to plaintiff, or caution him of the hazard or danger incident to braking on said train or coupling cars, and that neither the defendant nor any one of her employees had explained to plaintiff, or instructed him how to avoid, the danger incident to such business.

"15. We find that the defendant was careless and negligent in allowing said sliver or splinter to remain upon and protrude from said rail on said switch.

"16. We further find that said defendant ran said train from Bunker Hill to Upland without brakemen, and that it was negligent in so running said train from Bunker Hill to Upland without any brakemen.

"17. The supervisor of defendant's road, who had charge on said day of all of defendant's road from Logansport to Hartford City, was on said construction train in charge of the hands thereon, and directed that plaintiff be ordered to the rear of the train to act as brakeman and couple cars on said train.

"18. Plaintiff had never, previous to June 9th, 1881, had any experience in railroading, except as a section hand on defendant's road and in work on the track.

"19. That said plaintiff was, by said injury so received, made lame, sick and sore, and suffered by reason of said injury great distress of mind and body, and the loss of his leg, permanently injuring him.

"20. That said injury was caused by the wrongful act of said defendant.

" 21. We find that it was negligence on the part of the defendant to order an inexperienced person to perform the duties of brakeman, and couple cars, without first giving him proper instructions.

" 22. That plaintiff is damaged by the pain, suffering and mental anguish endured, and the loss of his leg as aforesaid, in the sum of seven thousand dollars.

" 23. If, upon these facts, the law is with the plaintiff, we find for the plaintiff and assess his damages at seven thousand dollars.. If the law is with the defendant, then we find for the defendant."

Upon the return of the verdict, and before the jury were discharged, appellant filed the following motion:

" The defendant asks the court to direct the jury to make more perfect their verdict in the following particulars:

" 1. That they make the second finding more perfect by finding whether the defendant had or had not notice of the plaintiff's minority, and of his mother's objection to his working on the railroad.

" 2. That the eighth finding be made more definite by finding the name and position of the defendant's agent who ordered the plaintiff to go to the rear end of the construction train and act as brakeman thereon.

" 3. That the tenth finding be made more perfect and definite by finding the name and position of the agent of the defendant who ordered the plaintiff to couple cars to the construction train.

" 4. That the eleventh finding be made more perfect and definite by finding what care the plaintiff exercised in coupling said cars.

" 5. That the twelfth finding be made more perfect and definite by finding what care the plaintiff exercised in attempting to make said coupling.

" 6. That the fourteenth finding be made more perfect and definite by finding the name of the person, and the position he occupied in defendant's service, who ordered the plaintiff

to make the coupling of certain cars standing on said switch to other cars attached to the locomotive of the train upon which the plaintiff was working, and that they find the position occupied by Andrew Mertens.

"7. That the twentieth finding be made more perfect and definite by finding what the wrongful acts of the defendant were that caused the injury."

That motion having been overruled, appellant moved for a *venire de novo*. This motion was also overruled. We think that the court below clearly erred in overruling these motions.

The statute provides in relation to verdicts as follows: "The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury find the facts only, leaving the judgment thereon to the court." R. S. 1881, section 545.

The purpose of a special verdict is to avoid the mistakes that the jury may make in the application of the law to the facts. When a special verdict is demanded, the jury are to find the facts, and the court declares the law upon those facts; and hence it is well settled that a special verdict should be limited to the case as made by the pleadings, should find all the facts proven under the issues, and should not embody or state conclusions of law. If a special verdict includes findings of evidence, conclusions of law and matters without the issues, such findings will be disregarded in the determination and rendition of the judgment. If stripped of these matters, the verdict is yet sufficient to lead up to and support a judgment either way under the issues as made by the pleadings, a motion for a *venire de novo* will be overruled. *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186, and cases there cited; *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582; *Dixon* v. *Duke*, 85 Ind. 434; *Louisville, etc., R. W. Co.* v. *Balch*, ante, p. 93; *Hasselman* v. *Carroll*, 102 Ind. 153.

As appellee's mother is not prosecuting this action, we can

The Pittsburgh, Cincinnati and St. Louis Railway Company v. Adams.

not see how it is of any importance whether appellee was employed by appellant with or without her consent. The third and fourth findings, therefore, may be disregarded.

In the eleventh and fourteenth findings, it is stated that appellee received the injury without fault or negligence on his part.

In the twelfth finding, it is stated that appellee exercised such care as might reasonably have been expected of him, considering his youth and inexperience.

The fifteenth finding is, that appellant was careless and negligent in allowing the sliver or splint to remain and protrude from the rail.

In the sixteenth finding, it is stated that appellant was guilty of negligence in running the train without brakemen.

The twentieth finding is, that the injury was caused by the wrongful act of appellant.

The twenty-first finding is, that it was negligence on the part of appellant to order an inexperienced person to perform the duties of brakeman and to couple cars, without first giving him proper instructions.

In each and all of these findings in relation to wrong and negligence on the part of appellant, the jury, instead of returning the facts and leaving it for the court to pronounce the law upon those facts, returned conclusions which embody conclusions of law. This they had no right to do, and hence all such conclusions must be disregarded; and hence there is nothing properly in the verdict showing that appellant was in any way guilty of wrong or negligence as connected with the defective rail, or that it was guilty of any other wrong or negligence to the injury of appellee, unless other portions of the verdict show wrong and negligence upon its part in ordering him from the work for which he was employed, to a different and more hazardous work. That is a question we shall hereafter consider.

Commencing with the decision of the English court in the

case of *Priestley* v. *Fowler*, 3 M. & W. 1, in 1837, the decision of the Supreme Court of South Carolina in the case of *Murray* v. *Railroad Co.,* 1 McMullan, 385, in 1841, and the decision of the Supreme Court of Massachusetts in the case of *Farwell* v. *Boston, etc., R. R. Corp.*, 4 Met. 49, in 1842, it has become the settled law in England, Scotland and Ireland, and the States of this Union, with scarcely an exception, that, as a general rule, in the contract of hiring, there is an implied undertaking upon the part of the master that he will use all reasonable care to furnish safe premises, machinery, and appliances for conducting the business safely, and that he will use all reasonable care to furnish competent and prudent co-employees. The master, by the contract of hiring, does not become an insurer against injury to the servant. On the other hand, in the contract of hiring, there is an implied undertaking upon the part of the servant that he will exercise reasonable care to avoid injury, and that he assumes all ordinary risks incident to the business, and all risks from the negligence of his co-employees. When the master has kept and performed his implied undertaking, the servant can not recover from him for injuries resulting from the business, or the negligence of such co-employees, however dangerous the business may be.

This general rule has been modified by statute in some of the States, but not in this State. The rule obtains, regardless of the fact that one employee may be the superior in rank to others in the same general undertaking or employment, unless he occupies the place of vice-principal. Pierce R. R. 358, and cases there cited; Wood Master and Servant, sections 326, 416, 425, and cases there cited; *Madison, etc., R. R. Co.* v. *Bacon*, 6 Ind. 205; *Gormley* v. *Ohio, etc., R. W. Co.,* 72 Ind. 31; *Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440 (41 Am. R. 552); *Robertson* v. *Terre Haute, etc., R. R. Co.*, 78 Ind. 77; *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191; *Louisville, etc., R. R. Co.* v. *Orr*, 84 Ind. 50; *Brazil, etc., Coal Co.* v. *Cain*, 98 Ind. 282; *Indiana Car Co.* v.

*Parker*, 100 Ind. 181; *Atlas Engine Works* v. *Randall*, 100 Ind. 293 (50 Am. R. 798); *Indianapolis, etc., R. W. Co.* v. *Johnson*, 102 Ind. 352; *Capper* v. *Louisville, etc., R. W. Co.*, 103 Ind. 305.

The above general rule applies to minors. Pierce R. R. 360, and cases there cited; Wood Master and Servant, section 368, p. 744, and cases there cited; Thompson Neg. 977, and cases there cited; *Ohio, etc., R. R. Co.* v. *Hammersley*, 28 Ind. 371; *Sullivan* v. *Toledo, etc., R. W. Co.*, 58 Ind. 26; *Ohio, etc., R. R. Co.* v. *Tindall*, 13 Ind. 366; *Atlas Engine Works* v. *Randall, supra; Brazil, etc., Coal Co.* v. *Cain, supra*. Out of this general rule has come the more specific one, that if the servant claims damages from the master for injuries received on account of defective premises, buildings, machinery or appliances, he must allege and prove that the unfitness or the defect, which caused the injury, was known to the master, or was such as, with reasonable diligence and attention to his business, he ought to have known. If the case before us is to rest alone upon the alleged negligence of appellant as connected with the alleged defective rail, then it must be shown that the rail was so defective when put in place by appellant, or, if it afterwards became worn and defective, that appellant knew of the defective and dangerous condition, or that it was defective and dangerous for such a length of time that appellant might and ought to have known of it by the exercise of reasonable attention, care and diligence. Thompson Neg., p. 971; Wood Master and Servant, sections 368, 414, and cases there cited; *Atchison, etc., R. R. Co.* v. *Wagner*, 33 Kan. 660 (21 C. L. J. 51); *Schooner "Norway"* v. *Jensen*, 52 Ill. 373; *Indianapolis, etc., R. R. Co.* v. *Love*, 10 Ind. 554.

If the jury had found as a matter of fact, that appellant put down a defective and dangerous rail, or that it had actual knowledge of the defective rail, or had found and stated the length of time that it had been defective, and such other facts, if any, as surrounded the case, their verdict would have been a verdict of facts, and the court might then have de-

clared upon the facts, as a matter of law, that appellant was or was not guilty of negligence as connected with the rail. No such facts are stated in the special verdict, and hence there is nothing in that verdict to show that appellant was guilty of negligence in allowing the alleged defective rail to remain in use upon the road-bed. It is apparent that the jury meant to find that appellant was thus guilty of negligence, but they returned legal conclusions instead of the facts. The verdict is, therefore, defective upon its face, and so defective that judgment can not be rendered upon it, if, as stated, the case is to rest alone upon the alleged negligence of appellant in allowing the defective rail to remain in use.

Appellee contends, however, that when injured he was not engaged in the work for which he was hired; that he was a minor, without experience in braking, operating trains and coupling cars; that he was wrongfully taken from the work for which he was engaged, and ordered by appellant to a more hazardous work, and that, therefore, the above general rule does not obtain, and that appellant is liable regardless of the fact as to whether or not it knew, or with reasonable care might have known, of the defective rail.

The above general rule is not without its exceptions, modifications and limitations.

The servant's implied assumption of risks is confined to the particular work and class of work for which he is employed. There is no implied undertaking, except as it accompanies and is a part of the contract of hiring between the parties. When the servant voluntarily, and without directions from the master, and without his acquiescence, goes into hazardous work outside of his contract of hiring, he puts himself beyond the protection of the master's implied undertaking, and if he is injured he must suffer the consequences. On the other hand, if the servant, by the orders of the master, is carried beyond the contract of hiring, he is carried away from his implied undertaking as to risks. If the master orders him to work temporarily in another department of the

The Pittsburgh, Cincinnati and St. Louis Railway Company v. Adams.

general business, where the work is of such a different nature and character that it can not be said to be within the scope of the employment, and where he is associated with a different class of employees, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work and the risk of negligence on the part of such employees. He will not necessarily be guilty of negligence in obeying such orders of the master, even though they may carry him into more hazardous and dangerous work. Whether or not the servant may be negligent in obeying such orders, will depend upon the facts and circumstances of each particular case. The facts and circumstances may be such as to show that in obeying such orders the servant voluntarily assumed the increased risks; or they may be such as to show that he obeyed the orders for a temporary change, under threats of discharge, or under such circumstances as that he might well have expected a discharge if he disobeyed.

In all cases the master is bound to disclose to the servant latent defects and dangers of which he has knowledge, or of which he ought to have knowledge by the exercise of reasonable attention, care and diligence, and of which the servant has no knowledge, and would not discover by the exercise of reasonable care. This is particularly so when the master employs, for a hazardous and dangerous work, a child, young person, or other person without experience, and of immature judgment. In such a case, the master is bound to point out the dangers of which he has, or ought to have, knowledge, and give to the employee such instructions as will enable him to avoid injury by the exercise of reasonable care, unless both the danger and the means of avoiding it are apparent, and within the comprehension of the servant. A neglect of such duties may, in a proper case, the servant being without contributory negligence, render the master liable, regardless of the fact that he may have exercised reasonable care in making and keeping the premises, machinery and appliances in a safe condition. The person employed may be so

young, inexperienced and immature in judgment, that no kind of warning and instruction would relieve the master from responsibility for injuries resulting from putting him at a hazardous and dangerous work.

In the cases last above mentioned, the gravamen of the action is the negligence of the master in failing to give the proper warnings and instructions, and in employing a person of such immature years and judgment that such warning and instructions would afford no protection. And hence, in order that the master may be properly charged as being thus negligent, and made liable for resulting injury, it must be made to appear that he knew, or by the exercise of reasonable care and observation might have known, of the inexperience, disqualification and immature judgment of the servant employed. When a person of apparently sufficient age, physical ability and mental caliber to perform the service, seeks an employment at the hands of a railway company, or other master, he ought to be held to an implied representation that he is competent to perform the duties of the position he seeks, and competent to apprehend and avoid all dangers that may be discovered by the exercise of ordinary care and prudence. In such a case, we know of no good reason or rule of law that will compel the master to pass him through a critical examination to discover his competency for the place, or that will convict the master of negligence for not so doing.

As we have said, when, by the order of the master, the servant is carried beyond his employment, he is carried away from his implied undertaking to assume the risks incident to the employment. Hence it is, that when a servant is thus, by orders of the master, put at work outside of his employment, and is injured by reason of defective machinery, railroad track, etc., without his fault, the master is liable, regardless of the care he may have exercised to keep the machinery, railroad track, etc., in a safe condition. When a servant is thus ordered to work at a particular place, or with particular machinery, etc., outside of his employment, the

master impliedly assures him, not only that he has exercised reasonable care to have the place, machinery, etc., in a safe condition, but also that they are in a safe condition and fit for the business for which they are used. This principle, or rule of the law, has been more frequently and more rigorously applied in cases of employees immature in years, judgment and experience.

Here again it should be observed, that the master will not be thus liable, if the circumstances are such as to show that the servant is competent to apprehend the danger, and expressly or impliedly assumes the risk. The following authorities fully support the above ruling: *Atlas Engine Works* v. *Randall, supra; Hill* v. *Gust,* 55 Ind. 45; *Hawkins* v. *Johnson, ante,* p. 29; *Indiana Car Co.* v. *Parker, supra; Mann* v. *Oriental Print Works,* 11 R. I. 152, and Judge Redfield's note thereto, 14 Am. L. Reg. N. S. 728; *Railroad Co.* v. *Fort,* 17 Wall. 553; *Lalor* v. *Chicago, etc., R. R. Co.,* 52 Ill. 401; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 572; *Chicago, etc., R. W. Co.* v. *Bayfield,* 37 Mich. 205; *Dowling* v. *Allen & Co.,* 74 Mo. 13; Wood Master and Servant, sections 349, 350, 352, 439; Beach Con. Neg., section 132; Thompson Neg., pp. 975, 976, section 7; p. 977, section 8; p. 979, section 9; p. 1016, section 21; Pierce R. R. 378.

Thus far we have spoken of orders given to the servant by the master. In most of the cases without this State, above cited, the orders were by persons held to have sustained to the master the relation of vice-principal. We cite those cases in support of the general doctrines here declared. So far as they hold that any particular person, upon any particular evidence, may be regarded as a vice-principal, we express no opinion, either of approval or disapproval at this time. We are not required at this time to decide anything upon those questions, because they are not properly before us.

We turn again to the special verdict. It is very clear that this verdict does not bring appellee's case within the doctrine for which he contends, and the doctrine here declared.

It is stated in the fifth special finding, that appellee was ordered by appellant's section boss, having charge of a certain section of the road, to go upon a construction train, but it is not shown that this section boss had any authority at all over appellee, or that he was the boss of the section upon which he was employed to work.

It is stated in the eighth special finding, that appellee was ordered by appellant's "agent and plaintiff's superior in authority" to go to the rear of the construction train and act as brakeman.

In the tenth special finding, it is stated that "appellee was ordered by an agent of defendant, and a superior in authority to plaintiff," to couple some cars to the construction train.

In the fourteenth special finding, it is stated that appellee was ordered by "an employee of defendant, and superior to plaintiff in authority on said railway, to make the coupling of certain cars attached to the locomotive of the train on which he was working," and that the "defendant ordered him to couple cars."

We think that the jury should have been returned to their room with instructions to make each and every one of these findings in relation to the persons who gave the orders, more certain and specific, so as to show the nature of their employment, their duties and authority generally, and what control, if any, they were given and had over appellee as a servant of the common master. Whether the purpose of these findings was to show that appellee did not voluntarily leave the work for which he was employed, and voluntarily undertake a more hazardous work, or that appellant was guilty of wrong in thus ordering him to do the hazardous work outside of his employment, or is in any way liable by reason of such orders, it is equally important and essential that the persons who gave the orders should have had authority to bind appellant by such orders. In other words, the orders must have been the orders of the master, appellant. And in order that that should be so, the persons giving the orders

must, as to such orders, have occupied the position of vice-principal.

If appellee, without any kind of orders by appellant and as a mere volunteer, left the work for which he was employed, and as such volunteer undertook the coupling of cars, he can not hold appellant liable on account of any injuries he may have thus received. And if upon the orders of a co-employee, engaged in the same work with him, and without authority from the master to order and control appellee's work and movements, he left his work and engaged in the hazardous work, he can not make the master respond in damages for the consequences. Wood Master and Servant, sections 425, 450, 451 (p. 889); Thompson Neg., pp. 1016–17; *Felch* v. *Allen*, 98 Mass. 572; *Brown* v. *Byroads*, 47 Ind. 435; *Everhart* v. *Terre Haute, etc., R. R. Co.*, 78 Ind. 292 (41 Am. R. 567).

It does not necessarily follow that because the persons giving the orders stood towards appellee in the relation of superior in the employ of appellant, they had authority, or the semblance of authority, to order him to do the braking and coupling. They may have been superior in rank, and yet without authority, or the semblance of authority, to give such orders. For the reasons stated, also, the court should have sustained appellant's motion for a rule to make the complaint more certain and specific.

If it be said that the special findings last above under consideration amount to statements that the persons giving the orders to appellee occupied the position of vice-principals, then we should have those findings in collision with the rule that the jury, in returning a special verdict, can not embody therein conclusions of law. Whether or not such persons had such authority, or occupied the position of vice-principals, would depend upon their rank in the master's service, their duties and powers, their relation to appellee, and the authority expressly conferred upon them by the master, etc. These are matters of fact.

The jury should have found and returned the facts. Upon the facts so found it would have been for the court to declare, as a matter of law, whether or not the persons giving the orders were, as to such orders, vice-principals. Rejecting what may be regarded as conclusions of law, the special verdict states nothing to show that appellee left his work and went upon the train by the orders of any one who had authority to direct him and bind appellant by such directions. Here, again, the jury attempted to find that appellee went upon the train under proper orders, but rendered their verdict defective by returning legal conclusions, and not the facts.

The seventeenth finding is, that the supervisor, who had charge of a portion of the road, was upon the train in charge of the hands thereon, and directed that appellee be ordered to the rear of the car to act as brakeman and couple cars. Of this finding it is sufficient to say that there is nothing in the verdict to show that this direction was carried out by any one, or that appellee acted in obedience to it.

Whether the case should be made to rest upon the alleged negligence of appellant, as connected with the defective rail, or upon its alleged wrong or negligence in ordering appellee from the work for which he was employed to the different and more dangerous work of coupling cars, it must appear that he was not guilty of negligence which contributed to his injury. In no case will the master be held, as upon a warranty, against the negligence of the servant, who thereby brings injury upon himself which he might have avoided by the exercise of reasonable care and prudence. If appellee knew of the defective rail, and under all the circumstances, by the exercise of reasonable care, might have avoided the injury, he can not recover. It is not found in the special verdict that he did not know of the defective and dangerous rail, nor that the circumstances were such that he did not comprehend the danger. It is found that he had never performed the duties of brakeman, nor coupled cars, and that he had

no experience in railroading except working upon the track; but that might all be, and yet he might have known that to undertake to couple the cars over it, in the manner he did, was dangerous, and would result in injury. The other portions of the verdict, so far as they relate to care on appellee's part, are mere conclusions of law, and must be disregarded.

The judgment is reversed, with costs, and the cause remanded, with instructions to the court below to sustain appellant's motion for a *venire de novo,* and his motion for a rule upon appellee to make his complaint more certain and specific.

Filed Feb. 10, 1886.