No. 1,884.

## THE LINTON COAL AND MINING COMPANY v. PERSONS.

APPELLATE PROCEDURE.—*Law of Case.*—*Complaint.*—The sufficiency of a complaint cannot be attacked on appeal, after it has been held on a former appeal by the court of last resort to be invulnerable to attack on demurrer.

MASTER AND SERVANT.—*Assumption of Risk.*—A servant assumes such risks as, from the nature of the business as ordinarily conducted, he must have known, and those risks which the exercise of his opportunities for inspection would have disclosed to him.

TRIAL.—*Instruction.*—*Punitive Damages.*—The defendant, in an action for personal injury, where the trial proceeded upon the theory that the plaintiff was injured without fault on his part, by negligence of defendant in failing to repair the roof of a mine, an instruction that plaintiff could not recover punitive damages should have been given.

EVIDENCE.—*Personal Injuries.*—*Measure of Damages.*—In an action for personal injuries, the amount which plaintiff has been able to earn since the injuries, should be considered in estimating damages.

From the Sullivan Circuit Court.

*E. Short, C. L. Holstein* and *C. E. Barrett,* for appellant.

*C. E. Davis, W. V. Moffett, J. C. Briggs* and *J. W. Lindley,* for appellee.

Ross, J.—The appellee sued and recovered judgment against the appellant, for personal injuries received by him from falling slate, while going to his work, as appellant's servant in its coal mines. This cause was commenced in the Greene Circuit Court, and upon a trial in that court the appellee recovered judgment in the sum of $2,000.00. On appeal to this court, the judgment of the Greene Circuit Court was reversed. *Linton Coal and Mining Co.* v. *Persons,* 11

Ind. App. 264. After the cause was remanded to the Greene Circuit Court, the venue was changed to the Sullivan Circuit Court, where a trial was had by jury and a verdict returned in favor of appellee, assessing his damages at $3,000.00, for which amount judgment was rendered in favor of appellee.

The first, second and fourth specifications of error assigned call in question the sufficiency of the complaint. On the former appeal the complaint was held to be invulnerable to attack even on demurrer. That holding cannot now be questioned. It is the law of the case, and whether right or wrong cannot be reviewed on this appeal.

The third specification of error is that the court erred in overruling appellant's motion for a new trial.

There is no apparent conflict in the evidence as to the condition of the entry to the mine where appellee was injured. That it was dangerous on account of a layer of drawn-slate, which was liable to fall at any time, is apparently admitted. It also appears that draw-slate, when unsupported by timbers, is liable to fall at any time, but it may not fall for years, and that its treacherous nature is known to all experienced miners. The appellee was an experienced miner, and had worked for appellant some time before he was injured, and had passed in and out of this entry at least twice each day during working days from two and a half to three months before he was injured, which occurred in December, 1892. The entry was made in 1891, and although notice of its dangerous condition had been given to the appellant's mine boss, some time prior to the time appellee was injured, no steps were ever taken, either to remove the loose slate or to protect it from falling. The appellee testified that he did not know of the dangerous condition of the roof of the entry.

The Linton Coal and Mining Company v. Persons.

The occupation of coal mining, where the servant must go into, as it were, the very bowels of the earth by means of shafts and tunnels made for that purpose, and to work in rooms, made by the removal of earth, slate and coal, is one of unusual peril, and those who engage in it necessarily assume great risks. The nature of the employment is, in itself, so very hazardous that those who engage in it must know that it is attended with risks against which human foresight and skill cannot guard. One of the dangers attendant upon mining is that from falling earth, stone, slate or coal. These dangers are greatest, perhaps, in the rooms where the miner works, while the tunnels or entry through which he may have to pass to and from his work can be more or less guarded and protected. That, as to all of the dangers ordinarily incident to the employment, the servant assumes the risks, is elementary law. But to determine what are the risks naturally and ordinarily incident thereto, is not always easily done, depending to a very great extent upon the nature of the employment.

It may be safe to state, however, as a general proposition, that under the usual and ordinary contracts of employment between a master and a servant, whether the engagement be for service in a factory, on a railroad, or in a coal mine, the master undertakes to use reasonable care to see that his machinery is in good condition and repair, and that the place where the servant is to work is free from dangers other than those which are naturally attendant upon the work to be performed. Hence, when it is said that a master operating a coal mine shall furnish his servants with a reasonably safe place to work, it is not intended that the place shall be so timbered and guarded that rock, slate, earth or coal cannot fall, because to so protect the working place must necessarily destroy the ability

to operate the mine. And if the place furnished by the master appears to the servant to be free from any dangers except those which are naturally incident to the work, the servant, unless he sees that it is not so, has a right to assume that the master has performed his duty and that the place is as it appears. In other words, the servant is not bound to seek for latent defects or dangers, which do not necessarily arise from the nature of the employment and against which it is the duty of the master to use reasonable care to guard. And when it is said that the servant assumes the risk of dangers of which he has knowledge, it is not meant that he assumes no risks except from dangers of which he has actual knowledge or which are patent, for he does assume the risk of latent as well as patent dangers, which are a natural incident of the service and which it is not the duty of the master to guard against, that is; dangers, whether visible or invisible, known or unknown, at the time of employment; if they are such as naturally arise from the nature of the work to be performed, he assumes. It is for this reason that he is required to exercise reasonable care to ascertain and know of dangers which may exist or even arise suddenly and confront him during his service. He cannot shut his eyes to dangers that are obvious to those engaged with him who are ordinarily prudent.

As said by Coffey, C. J., in the case of the *Evansville, etc., R. R. Co.* v. *Henderson,* 134 Ind. 636 (639): "It is an elementary principle of law governing the relation of master and servant, that when a servant enters upon an employment which is, from its nature, necessarily hazardous, the servant assumes the usual risks and perils of the service, and this is especially true as to all those risks which require only the exercise of ordinary observation to make them apparent. In such

cases, there is an implied contract on the part of the servant to take all the risks fairly incident to the service, and to waive all right of action against the master for injuries resulting from such hazards. This waiver includes, on the part of the servant, all such risks as, from the nature of the business, usually and ordinarily conducted, he must have known when he embarked in the master's service, and, also, those risks which the exercise of his opportunities for inspection, while giving diligent attention to such service, would have disclosed to him. *Atlas Engine Works* v. *Randall*, 100 Ind. 293; *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151; *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18."

And a noted text writer thus states the rule, viz: "He must use reasonable care in examining his surroundings, to observe and take such knowledge of dangers as can be attained by observation. In performing the duties of his place, he is bound to take notice of the ordinary operation of familiar natural laws, and to govern himself accordingly. If he fails to do so, the risk is his own. He is bound to use his eyes to see that which is open and apparent to any person using his eyes; and if the defect is obvious, and suggestive of danger, knowledge on the part of the servant will be presumed, as well as when the dangers are the subject of common knowledge." Bailey Masters' Liability to Servant, p. 162.

Unless the servant by his contract of employment or the nature of the services to be rendered require that he inspect the place where he has to work for hidden or latent defects which are simply the result of the master's inattention or negligence, he is not bound to do so. The duty of inspection to ascertain and guard against dangers and defects not naturally incidental to the work to be performed by the servant,

rests upon the master. But as to the dangers which are naturally an incident to the service, the servant is bound to acquaint himself, even to the extent, if necessary to do so, of making a minute and thorough inspection. Hence those dangers which an experienced miner knows must and do threaten him at all times, are an incident to the service and are assumed by him. Under the facts as they appear in this case, we do not mean to be understood as holding that the appellee was either bound to inspect the entry to see that it was safe for passage, or that because slate was liable to fall from the roof of the entry, he necessarily assumed that as one of the risks of his employment.

It appears, from the evidence, that the appellee, from the time of his injury, December 26, 1892, until April 1, 1893, was unable to perform any work, but at that time he became weighmaster in appellant's mine. On the trial the appellant offered an instruction to be given to the jury, which reads as follows, to-wit:

"In this case, if you find for the plaintiff, in estimating the damages to which he is entitled, you should allow him the necessary expenses incurred by him, such as nursing, physicians' bills and medicines, to which you should add such sum as will compensate him for loss of time occasioned by the injury, and you may allow him such sum as you may deem reasonable and fair for pain and mental suffering. You must not allow punitive or vindictive damages. In considering the amount you shall allow, if anything, you should take into consideration what he has been able to earn since his injury. For loss of time a person injured is only entitled to such sum as the injury causes him to lose, including any loss of his capacity to earn in the future."

The court refused to give this instruction, and this

ruling is one of the reasons embraced in the motion for a new trial.

On the former appeal this court, by Davis, J., says: "The court should, if asked, have instructed the jury that they might also take into consideration appellee's ability to earn money in any other business or occupation than that of a coal miner. In other words, in assessing damages, it was proper for the jury to take into consideration, with other elements of damages in the case, any loss in the past or probable loss in the future of time or ability to earn money by appellee in his usual vocation, in connection with the fact as to whether he had secured, or was likely to secure, by reasonable exertion, other suitable employment, together with the compensation received by him therefor, or which he might have received, or that he may receive."

Counsel for appellee insist that there was no error in refusing this instruction, for the reason that in it the jury was told that in assessing appellee's damages they could not allow punitive or vindictive damages; that it was an issuable fact in the case, as to whether or not appellee's injury had been willfully inflicted, hence it was for the jury to determine whether or not the injury was willfully inflicted, and if they found it was, to assess punitive damages.

It is true that in the first paragraph of the complaint the appellee charged that appellant "negligently, willfully and unlawfully" permitted the roof to remain unsecured and in a dangerous condition, but this paragraph was not held good upon the theory that it charged a willful injury, for the specific facts set out do not make a case of willful injury. The facts which it is alleged caused appellee's injury make a case of negligence. But as said by Hackney, J., in *Parker, Admr., v. Pennsylvania Co.*, 134 Ind. 673 (679):

"Willfulness does not consist in negligence. On the contrary, * * * the two terms are incompatible. Negligence arises from inattention, thoughtlessness or heedlessness, while willfulness cannot exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence cannot be of such a degree as to become willfulness."

The theory upon which the court below construed the complaint and the trial proceeded was that appellee was injured without any fault on his part and by reason of the negligence of appellant in failing to secure the roof, for it instructed the jury that "The plaintiff cannot recover exemplary damages in this action, but only compensatory damages for injuries actually sustained."

The instruction under consideration was not objectionable because of the statement therein that "you must not allow punitive or vindictive damages."

As indicated by the opinion on the former appeal, the court should have instructed the jury, when requested so to do, that they might take into consideration in determining and assessing appellee's damages, "what he has been able to earn since his injury." But counsel for appellee insist that had the court given the jury the instruction asked they might, and probably would, have construed it to mean that they must deduct his earnings from the damages sustained by him on account of his injuries, and that such is not the rule governing the assessment of damages in such cases. In assessing his damages it was the duty of the jury to take into consideration, among other things, his ability to earn money, not alone in the occupation of a coal miner, but in any other business or occupation, and this is shown by what he actually earned after the receipt of his injury. The instruc-

tion does not proceed upon the theory that what appellee earned must be deducted from whatever amount they should find due him on account of his injuries. The objections urged are untenable.

No instruction given obviated the error in refusing to give this instruction.

It is also urged that the court erred in giving instruction numbered two, of those given by the court of its own motion. The objection to it is to the use of the word "patent" instead of "latent." The instructions are copied into the record twice. They are properly in the record but once, namely, where made a part of the record by bill of exceptions. The instruction complained of, as copied into the bill of exceptions, is not subject to the objection urged against it.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Filed April 16, 1896.