*Filed Oct. 14, 1891.*

----

No. 14,998.

NALL, ADMINISTRATRIX, *v.* THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY.

MASTER AND SERVANT.—*Fellow-Servants.*—Whether in a given case one is acting as the representative of the master, or merely as a co-employee with others employed by the same master, depends upon the character of the duties imposed upon him and which he is performing at the time, and not upon his rank or title.

SAME.— *Who are Fellow-Servants.*—Where an employee of a railroad company, intrusted with the duty of saving a bridge whose destruction is threatened by a freshet, in pursuance of the authority conferred upon him, calls out the employees from the various departments of the railroad company's service to unite in saving the bridge, chooses the place where they should work, and directs what appliances they should use, he is not a fellow-servant with those under his control.

SAME —*Duty of Master.*—The master's duty to his employees to provide safe places for them to work is a continuing one, and requires him to use ordinary care to keep them safe, and if they become unsafe through

Nall, Administratrix, *v.* The Louisville, New Albany and Chicago R'y Co.

his neglect, or are made unsafe through his act, he must answer in damages to a servant who is injured thereby, who is himself free from contributory negligence.

SAME.—*Assumption of Risk of Employment.*—Where the master orders a servant to do something which involves encountering a risk not contemplated in his employment, although the risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril; but unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service, or assume all additional risk, but may obey the order, using care in proportion to the risk apparently assumed.

From the Orange Circuit Court.

*S. B. Voyles,* for appellant.

*E. C. Field, C. C. Matson, W. S. Kinnan, D. M. Alspaugh* and *J. C. Lawler,* for appellee.

McBRIDE, J.—The appellant is the widow and administratrix of one Waldo Nall, who was killed while in the service of the appellee.

She brings this suit to recover damages for his death, which she charges was caused by the actionable negligence of the appellee.

The deceased was a track-hand, or section-hand, who had been employed in railroad work only about two weeks when he was killed. A heavy freshet in Salt creek, Lawrence county, caused a large accumulation of drift-wood and other *debris* against one of appellee's bridges which spanned said creek, and endangered its safety to such an extent that it was deemed necessary to call out an extraordinary force of men on Sunday to save the bridge from destruction. The complaint alleges, in substance, that the appellee intrusted to one —— Helms the sole and absolute supervision over and direction of the task of saving said bridge, and that, acting under the authority thus conferred, he called upon and required a large number of employees, belonging to

various departments of appellee's service, to assist in said work, he alone directing and commanding how such work should be done and who should do it.

In addition to the averments of the complaint descriptive of the duties thus devolved upon Helms, and of the authority with which he was invested by the appellee, he is designated in the complaint as "agent and chief foreman of defendant," "defendant's agent and chief," etc.

It is also averred that the appellee is a corporation, with its principal offices and officers all beyond this State. Among the employees thus called out was the decedent, and it is alleged that he was killed while engaged in the prosecution of said work.

The facts relating to his death are stated in the complaint as follows :

"That said Nall, from lack of experience, and from the fact that said peril and danger were not apparent to him, was not apprised of the imminence of such peril and danger, all of which defendant was fully cognizant when said Nall was required to work at said drift-wood, logs and *debris*. Defendant, well knowing the perils and dangers incident to said work of removing said drift-wood, logs and *debris*, through and by its agent and chief aforesaid, charged, as above stated, with the accomplishment and prosecution of said work, wantonly and negligently required said Nall to go down off the railroad track into said stream, among said drift-wood, and engage with said other men so gathered together by said Helms (agent and chief), and while said work was in progress, under the supervision of said defendant's above-named agent and chief, charged by defendant as stated, the said Helms, as such representative of the defendant, carelessly and wantonly commanded and caused one of the locomotive engines of defendant to be suddenly started up and accelerated in speed, while plaintiff, decedent, was yet down among such drift-wood, and ropes thereunto attached, and in great peril of being struck by said ropes and appliances attached

Nall, Administratrix, *v.* The Louisville, New Albany and Chicago R'y Co.

to said engine in said work of removing said drift-wood, logs and *debris,* and where he had been commanded to go as stated, and thereby one of such ropes was by said engine suddenly, carelessly and recklessly pulled, jerked and slipped from its place with great violence, and struck said plaintiff, decedent, and killed him instantly, all without fault and without any neglect on the part of plaintiff's decedent."

A demurrer was sustained to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and error assigned on this ruling presents the only question in the case.

Counsel for appellee state the grounds of objection to the complaint as follows:

"*First.* That the proximate cause of the death of the decedent was the negligence of the engineer and foreman in suddenly starting the engine, and that the engineer and foreman and decedent being co-employees, there can be no recovery.

"*Second.* If it be held that the proximate cause of decedent's death was the dangerous place at which he was directed to perform the service, then the risk and hazard of performing the service at the place was obvious to the decedent, and that in entering upon the performance of such work at such place he assumed all the risks incident thereto."

The sufficiency of the complaint in this case depends upon the *status* of the foreman, Helms. From the averments of the complaint, in what relation did he stand to the decedent and to the appellee? If he was merely a fellow-servant with appellee, it is clear that, under well established rules, the complaint did not state a good cause of action.

Counsel for appellant inveighs bitterly against the rule which exempts a master from liability for an injury suffered by an employee because of the negligence of a fellow-servant. So far as the rule is concerned, there is substantial unanimity among the courts of this country. It is uniformly regarded, within proper limits, as just, and in this opinion we heartily

concur. While this is true, when it comes to the practical application of the rule the widest diversity of opinion is found to exist as to who are and who are not to be considered as fellow-servants. We are of the opinion that in some of the decided cases the courts have gone to an unwarranted extreme. While the errors thus committed may be to some extent corrected and the application of the rule limited, the rule itself is too firmly embedded in our jurisprudence to be dislodged, except by legislation. It is not the province of the courts to declare the law as they think it ought to be, but as it is.

Was the foreman, Helms, a fellow-servant of the decedent in such sense as to exempt the appellee from liability for his negligence?

This must be determined, not from the title given him, or from his rank in appellant's service, but from the character of the duties imposed upon him, and which he was performing when decedent was killed.

Bestowing upon him titles, or styling him in the complaint "agent," or "chief," or "representative of defendant," casts no light upon the matter. The law imposes certain duties upon a master, the performance of which he can not delegate to an agent so that he can escape responsibility. Whether the master assumes to discharge these duties in person, or intrusts them to another, he is in either case regarded as the actor.

The agent to whom he intrusts such duty, regardless of his rank, acts as the master, and in his place. *Indiana Car Co.* v. *Parker*, 100 Ind. 181, and authorities cited; *Atlas Engine Works* v. *Randall*, 100 Ind. 293; *Capper* v. *Louisville, etc., R. W. Co.*, 103 Ind. 305, and many other cases that might be cited.

Among the duties thus resting upon the master is that of using ordinary care to provide for his employees a safe place in which to work, and safe appliances with which to do the work required of them. Also to use ordinary care in the

selection of his employees, and to neither knowingly employ nor retain in his service any whose habits, or lack of capacity or skill, will materially enhance the dangers of the service. A servant who is himself free from contributory negligence may recover damages of his master for any injury sustained by him by reason of the master's failure to properly acquit himself of any of these duties. When a master intrusts to a subordinate the duty of furnishing places and appliances for work, or the selection of employees, the negligence of such subordinate in relation thereto is his negligence, and he must respond.

Thus far the rule is not only well settled in this State, but there is general and substantial unanimity among the authorities everywhere. Outside of the limits thus indicated, the authorities are in irreconcilable conflict, and display the widest diversity of opinion. Thus, in one jurisdiction it is held that a section foreman on a railroad represents the master, and is not a fellow-servant with those under his control; while in others the opposite extreme is reached, and it is held that, in the case of corporations, all are fellow-servants, within the meaning of the rule, who are engaged in the common enterprise of carrying on the business of that corporation, regardless of their rank, from the humblest employee engaged in the most menial service to the general manager, or the president, except only when they are acting in discharge of the master's duty, in supplying a place to work, or appliances with which the work is to be done, and in the selection of employees.

In the case of *Columbus, etc., R. W. Co.* v. *Arnold*, 31 Ind. 174 (p. 184), the court not only carried the rule to the latter extreme, but far beyond, and used the following language: "The board of directors of a railroad company are its immediate representatives, and occupy the relation of master to the various employees engaged in operating the road and superintending and performing the business of the company in its various departments. When an injury results to a passen-

ger on a train, or to a stranger, from the negligence or care-
lessness of an employee in the discharge of the duties de-
volving upon him, the principle of *respondeat superior* ap-
plies, and the company is responsible in damages; but this
principle does not apply as between the company and its
employees, and in such cases the company can only be held
responsible to the employee where the injury is caused by
the negligence or failure of the board of directors to perform
some duty devolved upon them by express contract with the
employee, or which is implied from the duties devolving
upon them in their relation of master to the employee." In
that case the negligence complained of was that of a master
mechanic in charge of repair shops, and charged with the
duty of keeping locomotives and other machinery in repair,
who had negligently allowed a locomotive to get out of re-
pair, and to be used in that condition, whereby the fireman,
who was employed thereon, and who was himself without
fault, was killed.

It was held that the corporation was not liable, on the
ground that the negligence was that of a co-employee, for
which the master was not liable.

As all of the courts, expressing such divergent views, as-
sume to declare the common law, it is, of course, apparent
that some of them have wrongly interpreted and applied
the law.

The rule as laid down in *Columbus, etc., R. W. Co.* v.
*Arnold, supra,* has been greatly modified in *Indiana Car Co.*
v. *Parker, supra, Atlas Engine Works* v. *Randall, supra,* and
in many other cases since decided, in so far as relates to the
duty of the master to provide safe places and appliances for
work, and his duty in selecting and in retaining servants in
his service.

The recent case of *Taylor* v. *Evansville, etc., R. R. Co.,*
121 Ind. 124, may be said to mark another and very im-
portant modification of the doctrine of *Columbus, etc., R.*

*W. Co.* v. *Arnold, supra.* In the opinion in that case the following language is used :

"Our judgment is that, at the time the appellant was injured, Torrence, the master mechanic, was performing the master's duty, and not merely the duty of a fellow-servant. He was in control of the shop where the appellant was working; he was the only representative of the master at that place ; men, machinery and work were under his control. He gave the orders which it was the duty of those under him to obey, and he alone could give orders as the master's representative. He gave the specific order under which the appellant acted. He did not join the appellant as a fellow-servant in doing the work, but he commanded it to be done. He was in the position of one exercising authority, and not in that of one engaged in common with another in the same line of service. * * * It is not easy to conceive how it can be justly asserted that one who commands an act to be done, and who possesses the authority to command and enforce obedience from all servants employed in a distinct department by virtue of the power delegated to him by the master, is no more than a fellow-servant, for in the absence of the master, the command, if entitled to obedience, must be that of the master conveyed through the medium of an agent. Nor can it be held, without infringing the principles of natural justice, that if he who is authorized to give the command makes its execution unsafe, the employee, whose duty it is to obey, has no remedy for an injury received while doing what he was commanded to do."

This is decisive of the case at bar. Applying this doctrine to the case before us, it is clear that the parties were not fellow-servants. To Helms was delegated absolute authority and control over the undertaking then in hand. He was authorized by the master to command the presence of the decedent, as of all the others engaged in the work, and

Nall, Administratrix, *v.* The Louisville, New Albany and Chicago R'y Co.

to command where they should work and what they should do. He had all power which the master had to exact obedience to his commands.

The complaint alleges that while the decedent was in a certain place, doing a certain thing in obedience to the express order of Helms, the latter carelessly and wantonly commands another employee to start the locomotive engine in such way as to cause his death. Having required decedent to do a certain thing, while that thing is being done he carelessly, by another command, puts him in mortal peril and causes his death. If *Taylor* v. *Evansville, etc., R. R. Co., supra*, is well decided there is no room for controversy over the sufficiency of the facts pleaded in this case. Of course, the question here is on the pleading alone, the demurrer to the complaint admitting such facts as are well pleaded. The complaint is far from being a model pleading, but it states facts sufficient to constitute a cause of action, and the circuit court erred in sustaining the demurrer to it. It should be said, however, in justice to the court below, that the case of *Taylor* v. *Evansville, etc., R. R. Co., supra*, was not decided until after this case was decided in that court, and that his ruling was doubtless based upon what then seemed to be the weight of authority in this State.

Judgment reversed, with costs, with direction to the Orange Circuit Court to proceed in accordance with this opinion.

Filed June 19, 1891.

## On Petition for a Rehearing.

McBride, J.—The appellee asks a rehearing upon the following grounds:

"1st. Because the complaint shows that the act which caused decedent's death was the act of a co-employee.

"2d. Because the dangers incident to the work which decedent was performing, were open and apparent to him, and he assumed the risk."

It is insisted that the court, in the original opinion, has

failed to discriminate "between those duties which Helm performed as the act of the master, and those which he negligently performed as a servant.".

As said in the original opinion, whether in a given case one is acting as the representative of the master, or merely as a co-employee with others employed by the same master, depends upon the character of the duties imposed upon him and which he is performing at the time, and not upon his rank or title.

One occupying a subordinate position may be authorized or required by the master to perform certain duties for which the master can not escape responsibility by delegating his authority, while one occupying the highest and most responsible position may, in a given case, be a mere co-employee.

Ordinarily the duties pertaining to a given employment are clearly defined. When one speaks of employment as a section-hand, a brakeman, or an engineer on a railroad, or as a farm-hand, or as a puddler in an iron furnace, or a moulder in a foundry, the general character of the duties such employee will be required to perform are at once understood by those initiated into the mysteries of the particular calling. As a rule, also, the mention of a given employment suggests the character of the appliances to be used, and the place and manner of using them. One who is placed in charge of a force of men engaged in any of those occupations, whose duties are limited to carrying on the work, or directing it, whether actively assisting therein or not, and who is invested with no authority, or charged with no duty in furnishing places or appliances for the work, or in the employment or retention of employees, is himself usually a mere co-employee. His duties require him to use, or superintend and direct the using of places and appliances, and to control employees furnished by the master. If, however, he is given additional authority, and is charged with the duty of furnishing places to work, and appliances for the work, and is au-

thorized to employ and discharge operatives, he is, as to such things, not a co-employee, but speaks and acts as the master.

One who is placed in unrestricted control of a given department by his master, and is clothed with the power to command the services of the other employees, not simply to see that they faithfully discharge the duties ordinarily pertaining to their employment, and in the usual places, with the usual appliances provided therefor, but has authority to require of them the performance of other duties, in other places and with other appliances, who has the authority to call the section men, the bridge builders, the freight handlers and the laborers from the gravel pit and gravel train, and require of all that they unite in averting the threatened destruction of a bridge, is certainly in such matter more than a mere fellow-servant with those thus subject to his control. Indeed, counsel concede that Helms was a vice-principal, and represented the master in selecting the men, in procuring the machinery, and in choosing the place to work, but say :

"After he had chosen the men, the machinery and the place, his duties as vice-principal were complete. When he began to perform the work of taking out the drift wood, with all proper and suitable agencies provided, he was then a fellow-servant."

Counsel err in assuming that when Helms pointed out to the assembled employees the imperilled bridge and the accumulated drift and *debris* which threatened it, he had completed the work of selecting the place to work. As above stated, within their several departments, each man knows, or should know, in a general way at least, what duties are required of him, and how, when and where to use the appliances provided ; but at such a time and in such an emergency as that described in the complaint there must be an intelligent directing head to assign to the men their places, and direct them what to do ; to direct what appliances shall be

used, and when, where and how they shall be used. This intelligent and directing head must be the master. And he to whom the master delegates such duty acts as the master, who can not escape responsibility by having another act in his stead.

Therefore, when Helms ordered the decedent to go down among the drift wood, and directed him what he should do there, he was still acting as vice-principal, and was furnishing to decedent his place to work. But, it is said, the dangers were open and apparent to him, and he assumed them.

It is true, that a servant impliedly assumes all the ordinary and usual risks incident to his employment, so far as those risks are known to him, or could be readily discerned by a person of his age and capacity in the exercise of ordinary care. But when the master orders a servant to do something which involves encountering a risk not contemplated in his employment, although the risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril. But, unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service, or assume all additional risk, but may obey the order, using care in proportion to the risk apparently assumed. *Brazil Block Coal Co.* v. *Hoodlet, post,* p. 327, and authorities there cited.

It is, however, not necessary in this case to consider how far the decedent did, or did not, assume apparent risks when in obedience to the order of Helms he went down into the stream and among the drift wood. The master's duty to his employees to provide safe places for them to work is a continuing one, and requires him to use ordinary care to keep them safe, and if they become unsafe through his neglect, or are made unsafe through his act, he must answer in damages

to a servant who is injured thereby, who is himself free from contributory negligence.

Even if it were conceded that in this case the decedent did assume the apparent risks, it would only include such risks as then existed or might reasonably be apprehended. He had a right to assume that the master would not do that which would enhance the danger or expose him to new and unsuspected perils.

When Helms assigned to decedent his place to work he represented the master. When he then turned to the engineer and gave the order which caused decedent's death, had he lost that character and become a mere fellow-servant? The law can not keep pace with such protean changes, and recognizes that act also as the act of the master creating a new danger which the decedent could not reasonably be expected to foresee, and which he therefore did not impliedly assume.

Since the original opinion was written our attention has been called to the case of *Dayharsh* v. *Hannibal, etc., R. R. Co.,* 103 Mo. 570, which is in principle in line with the conclusion we have reached in this case.

The petition for a rehearing is overruled.

Filed Oct. 13, 1891.