No. 17,649.

Salem-Bedford Stone Co. *v.* Hobbs, Administrator.

Bill of Exceptions.—*Record Entry of Filing.—Appeal.*—If there is no showing in the transcript of the record, that what purports to be a bill of exceptions was ever filed in the office of the clerk of the trial court, the bill and the evidence contained therein are not properly in the record.

Pleading.—*Complaint.—Master and Servant.—Assumed Risk.*—A complaint by an administrator of a decedent, who was an employe in a stone-quarry yard, alleging that the decedent's death was caused by a stone falling on the decedent while in line of duty as hooker, which stone was sitting on edge on loose-made earth, and avers that the loose-made earth was liable to cause the stone to fall over, is not sufficient, where it does not appear that the loose-made earth did cause it to fall over and inflict the injury complained of.

From the Lawrence Circuit Court.

*Dunn & Lowe*, for appellant.

*J. R. East, R. Miller, W. H. Martin* and *J. E. Boruff*, for appellee.

McCabe, J.—The appellee, as administrator of the estate of James F. Hobbs, deceased, sued the appel-

Salem-Bedford Stone Co. *v.* Hobbs, Administrator.

lant in the circuit court, in a complaint of but one paragraph, for negligence in causing the death of said decedent.

A trial of the issues joined resulted in a verdict and judgment against appellant for $1,750, which judgment upon appeal to the Appellate Court was reversed because the evidence did not support the verdict, that court holding that the evidence showed that the danger from which the decedent's injury resulted was one which was incident to the service in which he was engaged and the risk of which he had assumed in his contract of employment. *Salem-Bedford Stone Co.* v. *Hobbs, Admr.*, 11 Ind. App. 27.

On the return of the cause to the circuit court, the complaint was amended by filing a second paragraph, presumably to meet a suggestion made in the opinion of the Appellate Court that the action could only be maintained by alleging and proving that "the proximate cause of the injury was a latent or concealed defect or imperfection, which might, on reasonable inspection, have been discovered by appellant."

The trial court overruled a demurrer for want of sufficient facts to that paragraph.

The issues joined were again tried by a jury, resulting in the verdict and judgment, over appellant's motion for a new trial, for $5,000.

Error is assigned on the action of the trial court in overruling the demurrer to the second paragraph of the complaint and in overruling the motion for a new trial.

Appellant's counsel urge with great confidence that the evidence no more supports the verdict this time than it did when the case was decided by the Appellate Court. But unfortunately for the appellant the appellee's learned counsel urge with equal confidence that there can be no reversal on that ground, for the

reason that the evidence is not legitimately a part of the record.

It is claimed by the appellee that there is no showing in the transcript that what purports to be the bill of exceptions incorporating the evidence was ever filed in the office of the clerk of the court below.

And we find, on examination, that this claim is fully sustained by the record, there being no showing or statement in the transcript anywhere that such a bill of exceptions was ever filed.

And there is no response made by the appellant's counsel to this contention. They evidently have never seen the appellee's brief, or, if they have, know as a matter of fact that the bill of exceptions was never filed with the clerk below. But we have reasons to surmise that the bill was filed with the clerk below, and he has failed to so state in the transcript.

One reason for such a surmise is that there comes up so many transcripts from that court embracing what purports to be bills of exceptions without any statement therein that the same have been filed.

It is hardly supposable that the lawyers there are laboring under the mistaken belief that a bill of exceptions that has never been filed in the clerk's office, but is being carried around in somebody's pocket, can be certified here so as to become a legitimate part of the record.

If the bill was in fact duly filed, it was the duty of appellant's attorney to see to it before the transcript was filed here, that it stated that fact and not rely upon the legal opinion of the clerk as to what it takes to constitute a valid transcript. And the appellant's attorney has not fully discharged his duty when he has filed a brief on behalf of his client. He should see and read carefully the brief on behalf of the appellee,

Salem-Bedford Stone Co. *v.* Hobbs, Administrator.

and if need be make such reply or take such steps as appellee's brief seems to call for.

Appellee in his brief may be able to point out defects in the transcript or record fatal to the appeal which have escaped the notice of vigilant counsel on the other side, and which, if taken in time, can be rectified on a writ of *certiorari.* If, in fact, this bill of exceptions was duly filed in the clerk's office below, a writ of *certiorari* could have compelled the clerk to so certify. But it is not only no part of our duty to suggest to counsel what they ought to do to present their causes to this court, but propriety forbids us to indulge in such a practice.

But, however strongly we may suspect that a bill of exceptions has been filed, yet the statute requires it to be filed before it can become a part of the record. R. S. 1894, section 641 (R. S. 1881, section 629). And so complaints, answers, replies and demurrers must be filed before they become parts of the record. How is this court to know that they have been filed so as to become a part of the record? That must be proven by the clerk so stating in the transcript. We are not authorized to guess it into the record.

But it is fully settled, in a long line of cases, that the bill of exceptions is not a part of the record unless the transcript states that it was filed in the office of the clerk of the trial court. *Armstrong* v. *Dunn,* 143 Ind. 433, and cases there cited; *DeHart* v. *Board, etc.,* 143 Ind. 363, and cases there cited; *Ueker, Admx.,* v. *Bedford Blue-Stone Co.,* 142 Ind. 678, and cases there cited.

And if counsel had paid proper attention to the record, they might have secured a decision as to whether the evidence supports the verdict and enables the appellee to maintain the action, and thus put

an end to litigation. But now if appellant secures a reversal, it must leave the cause open for future litigation.

It appears from the second paragraph of the complaint that appellant was operating a stone yard in connection with its stone quarry, steam stone saw mill, engine, derricks, or traveling derricks, or travelers on a tramway; that the derrick, called a traveler, was used to raise and move blocks of stone over and around the stone yard; that appellant had piled blocks of stone in this yard in miscellaneous heaps of irregular shapes and sizes in lengths and width, piled upon loose earth and dirt mixed with spalls or small pieces of broken stone, and which, it was alleged, the appellant had carelessly and negligently failed to prop or stay said stone, or any of them; that it had carelessly and negligently placed a large stone nine feet long and five feet wide and fifteen inches thick on its edge, each end resting on two small irregular stones, which were placed on loose dirt, and that said large stone was in no manner propped or stayed so that the employees of the company could work safely around and about it, and that said stone so situated and placed rendered the place dangerous and unsafe to defendant's employees, and had been allowed to so remain for three months prior thereto; that the employment of deceased was to work in said stone yard as a hooker, whose duty in connection with another employee, was to fasten or hook the hooks called dogs attached to the derrick onto blocks of stone in said yard in order to raise them. And that while attempting to hook onto another stone, said large stone, so setting on its edge, fell over on him, causing his death, without any fault on his part; that he left a widow, etc.

The foregoing is substantially the same as the first paragraph on which the case was tried, but owing, presumably, to the suggestion of the Appellate Court, the second paragraph was added, differing from the first in some averments as to the dirt on which the stone rested, the substance of which is as follows: That said small stones rested on loose-made earth, liable to press down on one side and allow said unpropped stone to fall over; that the dangerous condition of said smaller stone could not, without close inspection, be seen by the employees working about it, for the reason that said dirt was hidden from view and appellant negligently failed to inspect the earth and condition of said smaller stones upon which said larger stone rested, and had it done so it could readily have known that said stone so situated was in danger of falling over.

The hidden or concealed defect or imperfection about the unpropped stone, for the absence of which the Appellate Court adjudged that the risk was one incident to the employment and was assumed by the decedent, was attempted to be supplied by the above averments about the loose new made earth or dirt hidden from view.

Whether that has been successfully done depends on the following allegations: "That * * * deceased, while in the line of his duty * * * without any knowledge of the dangerous condition of said stone, the smaller stones upon which it rested and the dirt beneath, and without being able to see the condition of the earth beneath said stones, attempted to hook onto another stone near by in obedience to the order of the company, then and there given him, and while his face was turned in another direction, the said large stone so resting upon said smaller stones suddenly fell over on and against decedent, so bruising

and mangling him so that in twelve hours thereafter he died."

There is no allegation here that the new and hidden or concealed element, namely, the loose new made earth had anything whatever to do with the large stone falling over on the deceased. Nor is there any allegation anywhere else in the paragraph conveying such an idea. It is only by the most liberal construction of the language just quoted that it can be said to convey the idea that the decedent was ignorant of the loose new made earth. Indeed, the averment is that that was the condition of the whole yard under all the stones piled therein without alleging his ignorance of that fact. But extending the most liberal intendment to the language quoted so as to ascribe to it the meaning that the deceased was ignorant of the loose-made earth under this particular stone, yet the existence of such loose dirt and his ignorance thereof does not help the pleading any, unless such soft dirt had some effect in causing the stone to fall over. The averment that it was liable to cause it to fall over is not sufficient unless it in fact did cause it to fall over. That fact is not alleged.

Therefore, the pleading stands as if there was no allegation in it about the loose new made earth or dirt. That element being eliminated, it appears that the deceased knew as much as his employer about the danger from which he was injured. That is, he knew that stones were piled in miscellaneous heaps on loose dirt in the yard, and that they were unpropped, and that the stone which fell on him was five feet wide, nine feet long and fifteen inches thick, was standing in the yard on its edge and that it had been so standing for some length of time. Whether he knew it had been standing in that condition three months is not stated. Common sense would teach any man that

such a stone in such situation would be liable to fall over. Enough is disclosed in the paragraph to show that there were other dangers of the same class incident to the employment in which the decedent was engaged.

In the *Evansville, etc., R. R. Co.* v. *Duel,* 134 Ind. 156, at p. 159, it was said: "Another rule, now firmly established, is that where the servant knows of the defect in the machinery, or the danger in the place where the is working, or of the want of skill of fellow servants, and, with such knowledge, voluntarily continues in such employment, he thereby exonerates the master from liability and is held to have assumed the risks incident to such defects, dangers, or want of skill. * * [Citing authority.] Out of this rule has necessarily grown the conclusion that the action for a violation of the employer's duty involves more than mere negligence and contributory negligence, and includes a denial of the assumption of the hazard." Citing *Louisville, etc., R. W. Co.* v. *Corps,* 124 Ind. 427, where Judge Elliott, speaking for the court, said: "For anything that appears in the complaint the peril was a known incident of the service and was one assumed by the plaintiff, and if it was, there can be no recovery."

It may not be necessary, in all cases, to make a good complaint by a servant against his master, for an injury sustained by the servant through his master's negligence, while engaged in such master's service, to deny in the complaint the assumption of the risk by the servant, or to aver that the risk was not a known incident to the service. But in a case like the ones from which we have quoted and the one now before us, where the facts set forth in the pleading strongly tend to show that the danger from which the injury complained of resulted, was a known incident to the ser-

vice, the complaint cannot be made good without a denial of the assumption of the risk in the complaint or a denial that it was a known incident to the service in which the servant was engaged when injured, if the facts and circumstances stated do not necessarily imply such denial. See *Peerless Stone Co.* v. *Wray,* 143 Ind. 574.

For these reasons the second paragraph of the complaint does not state facts sufficient to constitute a cause of action.

The judgment is reversed, with instruction to sustain the demurrer to the second paragraph of the complaint.

Filed February 12, 1896.