Filed May 5, 1896.

---

No. 1,963.

## STUART *v.* THE NEW ALBANY MANUFACTURING CO.

MASTER AND SERVANT.—*Assumed Risks.*—A servant, who is engaged in work which he was employed to perform, assumes those risks which are open and obvious, or which he can discover, by the exercise of ordinary care.

SAME.—*Personal Injury.—Complaint.— Obvious Danger.— General and Specific Averments.*—An allegation in a complaint, by a servant for damages, against the master, that he did not know of the defect in the appliance which caused the injury complained of, avails nothing, where it appears, from the facts pleaded, that he had an equal opportunity with the master of knowing the existing conditions, and could, by the most casual observation, have seen the defects.

SAME.—*Obvious Danger.—Rule as to Special Duty.*—The rule that a servant, acting under specific orders of his superior, as to the manner of doing the work, does not assume the risk incident to the performance in that manner, does not apply, where the danger is open to a person of ordinary prudence and intelligence.

From the Floyd Circuit Court.

*J. R. East, R. G. Miller* and *E. McCullough,* for appellant.

*W. H. H. Miller, F. Winter* and *J. B. Elam,* for appellee.

REINHARD, J.—The only question we are required to determine in this case is, whether the court committed any error in sustaining the appellee's demurrer to the appellant's amended complaint.

It is averred that the appellee was an Indiana corporation engaged in the business of erecting stone sawmills with the wooden framework thereto, and that on the 10th day of April, 1895, it was erecting in the city of Bloomington, Indiana, a certain building and frame sawmill; that one Martin Craft was then in appellee's employment for the purpose of managing the erection and construction of said building; that, in the construction of said building, said appellee had employed a number of hands who, on said date, were under the direction and supervision of said Craft, as aforesaid, and among the employes of the appellee was Martin L. Stuart, the appellant, who, as such employe, was assisting in the construction of said building in obedience to the orders and directions of said Craft; that the appellant was inexperienced in carpenter work, bridge building and such work as was necessary to erect said building; that in the construction of the building it was necessary to lift large beams, fifteen feet long and ten inches square, and set them on end in grooves or tenons cut for that purpose, to do which it was necessary to nail a heavy piece of scantling near the groove of the sill against which to rest the lower end of the beam while elevating the other end, so as to form a brace sufficiently

strong to hold the lower end of said beam in its place
during the time that said beam was being raised to a
perpendicular position and set it in place in the
groove; that, in raising said beam, the work was per-
formed by other employes of the appellee than the
appellant, lifting the top end gradually upward while,
by direction and orders of said superintendent, the ap-
pellant was holding a crowbar in the groove in which
the beam was to be placed; that to safely elevate the
beam, as herein described, after lifting the top end
above the heads of the employes, "tag ropes" were to
be used by attaching them to the top end of said beam,
and slowly lifting the same while the appellant was
lifting the lower end thereof in the groove cut for it;
that, in the performance of this work, the appellee was
careless and negligent in this—that it wholly failed
to nail on timbers or braces of any kind of sufficient
strength to hold said beam from slipping and injuring
persons in the rear of it, and further carelessly and
negligently failed to attach any ropes to said beam,
while lifting it above the heads of employes, to steady
the same and keep it from slipping off the sill at the
place of the groove, so that in lifting said beam in such
manner the place around and about which appellant
was at work was dangerous and unsafe, and said beam
was in danger of slipping at the bottom and injuring
the employes, and especially the appellant, which
facts were well known to appellee, or with reasonable
diligence could have been known at and prior to the
time of appellant's injury hereinafter alleged; that,
instead of putting a proper brace at the bottom
where said beam was to be placed, the said superin-
tendent had caused to be nailed an inch plank with
small wire nails in such manner that the appellant
could not readily nor without close inspection deter-
mine whether such brace was sufficiently strong to

hold said beam or not, and that working with his head down, closely watching the groove and crowbar, he was unable to tell or know whether the ropes had been attached to the other end of such beam or not, and that at no time in his life had he aided or assisted in placing such a beam in such a place; that just a few minutes prior to appellant's injury, he was ordered by said superintendent to go at once to the groove and hold said beam in with the crow bar; that said inch plank had been nailed to said sill with the edge upward; that the length and size of said nails were hidden from appellant's view, and he had not sufficient time to ascertain the length, size or number of nails which fastened said plank, and had no knowledge whatever of its defective condition then or prior thereto, and relied entirely, as he was compelled to do, upon the orders and directions of said Craft as such superintendent; that while in the line of his duty, and while obeying a direct order of said superintendent, he took hold of a crowbar, placed the same in a groove where said beam was being erected, and while so doing, and by reason of the carelessness and negligence of the appellant, said lower end of said beam suddenly twisted around past said crowbar, tore off said insufficient brace, struck the appellant on the leg near the knee joint, and fractured and broke the bones in several places, rendering his leg entirely useless, maiming and crippling him for life; all of which injuries he says he received without any fault on his part whatever, but solely on account of the negligence of the appellee, etc.

It seems that the breach of duty here assigned is two-fold, viz:

1.    The failure to have tag ropes on the top end of the timber to be raised.

2.    The failure to nail a sufficient brace on the sill

near the groove into which the tenon of the upright timber was to be placed.

It is a most familiar rule of law that it is the duty of the master to provide his servant with reasonably safe places and appliances in the performance of the work required of such servant. *Blondin* v. *Olitic Quarry Co.*, 11 Ind. App. 339; *Cole Bros.* v. *Wood*, 11 Ind. App. 37.

It is not apparent how the operation of raising the post could have been made more secure by the nailing of one or more braces to the sill near the mortise-hole or groove, so as not to interfere with the work.

The pleader does not seem to attach much importance to that branch of the charge which attempts to make negligence out of the failure to attach ropes to the top end of the beam. He does not aver or show that such ropes were necessary to the proper and safe elevation of said stick of timber, or that there was any derrick or other instrument by which the ropes could have been manipulated. All that is averred in this connection is that tag ropes *were to be used* by attaching them to the top end of the beam and slowly lifting the same while the plaintiff was fitting the lower end thereof in the groove cut for it. By whom these ropes "were to be used," or to what they could have been fastened or adjusted, or where the men manipulating them could have stood, is not shown. It is also averred, as we have seen, that "in raising said beam the work was performed by other employes." If we assume that it was the duty of such "other employes" to adjust the ropes, and by means thereof to lift the top of the post upward, this would seem to be the work of fellow-servants, for the omission of which, if injury resulted, the master would not be held responsible.

Another rule, equally familiar as the one requiring

the master to furnish his servant a safe place to work, is that when a servant of mature years and understanding enters into an employment which is necessarily hazardous, he will be presumed to have taken all the ordinary risks incident to such service; and the fact that the service is naturally a dangerous one does not increase the master's liability, if the injury results from the natural and ordinary incidents of the undertaking.

If there is a defect in the machinery or appliances, that renders the work of the servant more hazardous, and that defect is open and obvious, or can, by the exercise of ordinary care, be discovered by the servant, but is disregarded, the risk becomes one of the assumed risks of the service and liability therefor is waived. *Myers* v. *DePauw Co.*, 138 Ind. 590 ; *Salem Stone, etc., Co.* v. *Griffin*, 139 Ind. 141 ; *Evansville, etc., R. R. Co.* v. *Henderson*, 142 Ind. 596 ; *Salem-Bedford Stone Co.* v. *Hobbs, Admr.*, 144 Ind. 146 ; *Salem-Bedford Stone Co.* v. *Hobbs, Admr.*, 11 Ind. App. 27 ; *City of Lebanon* v. *McCoy*, 12 Ind. App. 500.

It is not averred that the appellant was taken from the work for which he was employed and put in a more hazardous situation by the command of the appellee or one representing it. On the other hand, it appears plainly enough that the appellant was employed to assist in the construction of the building, that is to say, in the performance of the work in which he was injured. It is true it is stated that appellant was inexperienced in carpenter work, bridge building, and such work as was necessary to assist in such building; but is it not shown that he did not possess his proper faculties or an average degree of intelligence. We cannot say that the work assigned the appellant was more than common or ordinary labor,

such as the appellant avers he was employed to perform. It required no particular experience or skill for the appellant to hold the crowbar in the groove so as to keep the beam from slipping beyond it. This is what he says, in his complaint, he was directed to do. Appellant must have known that there was at least some possibility of danger from the falling of the beam. He was therefore required to exercise his faculties in observing such defects, if any there were, about the machinery or appliances, as were open to observation. He avers that he was working with his head down, but it is not apparent how this would prevent him from knowing that there were no tag ropes to the top end of the beam, as he must have seen such end before it was lifted up from the ground. He saw the brace that was nailed to the sill. He must have known that the upright timber would in all probability come against it, else there was no necessity for its being there. He knew the brace was only an inch plank, nailed with its edge to the top, and that such a frail piece of wood thus fastened must in all probability give way to the heavy pressure of the beam if it came against it with sufficient force, whether it was fastened with small or large nails.

It is true the appellant alleges in his complaint that he did not know of the defect in the brace or of the failure to use the ropes at the top end of the beam, but notwithstanding such averment, it is apparent, from the facts pleaded, we think, that he had an equal opportunity with the appellee of knowing the existing conditions, and could, by most casual observation, have seen the defects; and where this is the case the general averment must give way to the specific. *Meyers* v. *DePauw Co., supra; Evansville, etc., R. R. Co.* v. *Duel,* 134 Ind. 156.

In *Jenney Electric Light, etc., Co.* v. *Murphy,* 115 Ind.

Stuart *v.* The New Albany Manufacturing Co.

566, Mitchell, J., speaking for the court in reference to the rule of the assumption of the risk by the employe, said:

"What he [the master] especially engages is, that he will not expose the employe to danger which is not obvious, or of which the latter has no knowledge or adequate comprehension, and which is not reasonably and fairly incident to and within the ordinary risks of the service which he has undertaken. There is another equally well-settled principle correlative to the rules which define the duties of the employer which holds the employe to the assumption of all risks naturally and reasonably incident to the service in which he embarks, so far as the hazards of the service are obvious and within the apprehension of a person of his experience and understanding. From the application of this principle, it follows that if an employe voluntarily, without specific command as to time and manner, uses an obviously defective implement, the defect being alike open to the observation and within the comprehension of the employer and employe, both stand upon common ground, and no recovery can be had for a resulting injury. * * * * Thus it has been well stated, 'that an employe who knows, or by the exercise of ordinary diligence could know, of any defects or imperfections in the things about which he is employed, and continues in the service without objection, and without promise of change, is presumed to have assumed all the consequences resulting from such defects, and to have waived all right to recover for injuries caused thereby.'"

In the case of *Rictman* v. *Stolte*, 120 Ind. 314, the plaintiff was employed by defendants in their mill, and, under the direction of the latter, he was engaged in loading heavy timber from a wagon into a car by means of a crane belonging to the defendants, on

which there was an iron hook which grasped and held the timbers. This hook was worn and defective, which the plaintiff knew or had the opportunity of knowing. While the plaintiff was engaged, as stated, a piece of timber slipped from the grasp of the hook and fell upon and injured him. The court held that on these facts there could be no recovery. Judge Olds, who delivered the opinion, after quoting from the case of *Jenney, etc., Co.* v. *Murphy, supra,* observes:

"The rule does not go to the extent of requiring the employe to search for latent defects in the machinery or appliances furnished him for use, but it does go to the extent that the employe assumes the consequences resulting from such defects as are patent, and such as, by the exercise of ordinary diligence, and giving proper heed to the things that surround him, he would discover. * * * * The rule of law we have stated requires one to exercise the faculties which he possesses, and if there is a patent defect in a tool or machinery used by him which he can see by looking, he must look, and unless some reasonable excuse is given he is guilty of negligence if he does not look. In this case the special findings show the defect to be one which the appellee would have known if he had exercised ordinary diligence, and given proper attention to his business and the things surrounding him, and that he was neglectful of his duty and of the things which surrounded him, and it was by reason of his own negligence that he did not know of the defect in the hook, and he is chargeable with having known of that defect."

In *Brazil Block Coal Co.* v. *Hoodlet,* 129 Ind. 327, the court, in considering this question, on page 332, said:

"It is also settled law that, notwithstanding the continuing duty resting upon the master to provide for his employes suitable and safe places and appli-

ances for their work, the employe who voluntarily continues in the master's service after notice of defects in tools, machinery, or other appliances which augment the danger of his service, thereby assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect."

The case of *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20, is instructive upon this subject. In delivering the opinion of the court in that case, Elliott, J., on p. 27, says:

"The rule which we regard as sound in principle and supported by authority may be thus expressed: The employe who continues in the service of his employer, after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. The promise of the master is the basis of the exception. If the promise be absent the exception cannot exist."

In the case of *Louisville, etc., R. W. Co.* v. *Sanford, Admr.,* 117 Ind. 265, on p. 266, it was said by Elliott, C. J.:

"Employes assume all the ordinary risks incident to the employment, but they assume no extraordinary risks caused by the employer's breach of duty, unless they have knowledge of the unusual danger caused by the breach and voluntarily continue in the company's employment. If, with this knowledge, they do continue, then the increased danger becomes an incident of the service which they assume and for liability from which the master is exonerated. * * The knowledge of the danger adds it as one of the incidents of the employment which the employe assumes. It becomes a danger which his continuance in his master's service makes an incident of the service, and when it

takes this character the master is no longer bound to answer for the employe's safety, so far as it is imperiled by the danger voluntarily and knowingly assumed. The knowledge in conjunction with the continuance in the service, operates as a waiver of the right to make the master responsible." After quoting from Beach on Contributory Negligence, the learned chief-justice continues: "This puts the rule exonerating the master on the true ground. He is exonerated because the employe himself assumes the danger, as increased, and, as he voluntarily assumes it, the master is relieved. The parties change positions; the employe assumes the risk that, if it were not for his knowledge, his employer would be compelled to assume. The duty which the employer is under is materially affected by the element of knowledge, and unless a duty is shown of course there can be no actionable negligence, since a duty lies at the foundation of every right of action grounded on the negligence of a defendant. It must follow, in order to show a breach of duty creating a cause of action for its breach, that it is necessary to aver that the employe was ignorant of the default of the employer which increased the perils of the service."

In the case of *Rogers* v. *Leyden*, 127 Ind. 50, the same learned judge, in delivering the opinion of the court, on page 54, said:

"We do not doubt that it [the instruction] correctly expresses the law as applied to a case where the question is one of contributory negligence, but here the question is not exclusively one of that character, for the material question is, whether appellee, having knowledge of the danger, assumed it as one of the risks incident to his service. The law upon this point is well settled, for it has often been held that where the danger is known, although it is attributable to a

breach of duty upon the part of the employe, the employe assumes it as one of the risks of his service if he voluntarily remains in the employer's service after he has acquired a knowledge of the danger. * * An exception to the general rule exists, but exists only when the employer promises to take measures to remove the danger."

This court, in an opinion by Crumpacker, J., in the case of *Evansville, etc., R. R. Co.* v. *Doan*, 3 Ind. App. 453, on page 455, said:

"While a servant does ordinarily assume all of the incidental risks of his employment, and those which are patent and within the reasonable range of his observation, at the same time the master undertakes to exercise reasonable care and diligence to provide him with safe appliances and surroundings."

It appears, from the averments of the amended complaint under consideration, that appellant, when he performed the work in which he was injured, was acting under the orders and directions of one Craft, the appellee's superintendent. It is also shown, in the pleading, that the appellant was employed for the purpose of assisting in the erection of the building. There is a line of cases holding that where a servant is acting under the specific orders of his superior, as to the time, place, and manner of doing the work, he is justified in obeying the orders of such superior, and does not assume the risk unless the danger is so apparent that a reasonably prudent man would not engage in the work.

The rule just referred to, however, applies only to cases where the duty assigned is a special one, although it may be within the general scope of the employment. Here it is conceded, by the facts averred, that the appellant was employed in the construction of the building and in the work in which he was as-

sisting. It cannot well be seen how the appellant could have been engaged in any special work, in assisting with the erection of the frame, when he had undertaken to perform just such work, for it must be conceded, we think, that the work referred to was a part of the employment of the erecting and construction of the building. True, he says he was neither a carpenter nor a builder, but it required neither of these to discharge the duty to which he says he was assigned. But, at all events, if he knew of the danger he cannot recover.

The case of *Taylor* v. *Evansville, etc., R. R. Co.*, 121 Ind. 124, is a leading one upon the doctrine referred to. There the plaintiff was ordered by the defendant's master mechanic to disconnect an equalizer on one of defendant's locomotives, and remove it from its place in order to enable the master mechanic to examine it. While thus engaged in the work of removing the key of the equalizer, under the specific direction of the master mechanic, the equalizer was negligently pulled out of its place and fell upon the plaintiff, seriously injuring him. The equalizer was a piece of iron weighing two hundred pounds, and it was caused to fall upon the plaintiff by the negligence of the master mechanic, and without plaintiff's fault. The court said, on page 130:

"It is important to bear in mind that the appellant was performing a special duty enjoined upon him by a superior whom it was his duty to obey. Although the work was within the general scope of his service, nevertheless he was performing it under a special order. It was, therefore, a wrong on the part of the agent having the right to order him to do the specific work to increase the peril of the service by his own negligence. The employe acting under the specific order had a right to assume, *in the absence of warning*

*or notice*, that his superior who gave the order would not, by his own negligence, make the work unsafe. * * We adhere firmly to the rule declared in such cases as *Indianapolis, etc., R. W. Co.* v. *Watson, supra.* [114 Ind. 20], and *Louisville, etc., R. W. Co.* v. *Sanford, supra* [117 Ind. 265], that the employe assumes all the risks incident to the service he enters, but we assert that the rule does not apply where a superior agent representing the master, orders the employe to do a designated act, and while the em-ploye is engaged in doing what he was specially or-dered to do, the superior, by act of negligence, causes the employe to receive an injury. The employe in en-tering the service does not assume a risk created by the negligent act of the master's representative in making unsafe work which he specially orders the employe to perform."

It will be seen, by reading the opinion, that the case from which we last quote proceeds upon the assump-tion that the danger was not open to the view of the plaintiff, and also that the negligent act was performed by the superior who gave the order directing plain-tiff to do the act which led to his injury, and that, too, without any warning or notice from such superior to the plaintiff. These facts readily distinguish the case cited from the case in hand. Here, as we have seen from the complaint, there is nothing to disclose the fact that the superintendent was to blame for not using tag ropes, nor is it made to appear that the order of the superintendent placed the appellant in any more danger than was obvious to any ordinary observant man.

Judge Elliott further says, in the case from which we have just quoted: "Many of the cases go much further than we do here, for they assert that an em-ploye is justified in obeying the orders of one who has

a right to command, *unless the danger of obedience is so apparent that a reasonably prudent man would not assume the risk.*" All the cases in this line, so far as we are advised, proceed upon the assumption that the danger was not open to a person of ordinary prudence and intelligence. In the present case, as we have seen, the reverse is true.

In *Brazil Block Coal Co.* v. *Hoodlet, supra,* it was said by McBride, J., speaking for the court: "When a master orders the servant to do something which involves encountering a risk not contemplated in his employment, although the risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril. But unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service or to assume all additional risk, but may obey the order using care in proportion to the risk apparently assumed, and if he is injured the master must respond in damages."

An authority of high standing says: "If, therefore, the master orders the servant into a situation of danger, and he obeys, and is thereby injured, the law will not deny him a remedy against the master on the ground of contributory negligence, *unless the danger was so glaring that no prudent man would have entered into it,* even where, like the servant, he were not entirely free to choose." 2 Thompson Negl. 975.

Says Judge Cooley: "It has been often—and very justly—remarked that a man may decline any exceptionally dangerous employment, but if he voluntarily engages in it, he should not complain because it is

dangerous. Nevertheless, where one has entered upon the employment and assumed the incidental risks, it is not reasonable to hold that other risks, which he is directed by the master to assume, are to be left to rest upon his shoulders, merely because he did not take upon himself the responsibility of throwing up the employment instead of obeying the order." Cooley Torts, Marg. p. *55     See also *Cincinnati, etc., R. W. Co.* v. *Long,* 118 Ind. 579 ; *Pennsylvania, etc., R. R. Co.* v. *O'Shoughnessy,* 122 Ind. 588 ; *Noll* v. *Louisville, etc., R. R. Co.,* 129 Ind. 260 ; *Coombs* v. *New Bedford, etc., Co.,* 102 Mass. 572 ; *Goodfellow* v. *Boston, etc., R. R. Co.,* 106 Mass. 461 ; *Haley* v. *Case,* 142 Mass. 316 ; *Crowley* v. *Burlington, etc., R. W. Co.,* 65 Ia. 658 ; *Abel, Exx.,* v. *President, etc., Canal Co.,* 103 N. Y. 581 ; *Reagan* v. *St. Louis, etc., R. W. Co.,* 93 Mo. 348 ; *Lewis* v. *Seifert,* 116 Pa. St. 628.

The court did not err in sustaining the demurrer. Judgment affirmed.

Filed May 5, 1896.