Hobbs, Adm., v. Salem-Bedford Stone Co.

HOBBS, ADMINISTRATOR, v. SALEM-BEDFORD STONE COMPANY.

[No. 2,793.    Filed May 24. 1899.]

APPEAL AND ERROR.—*Motion for New Trial.*—The Appellate Court cannot determine whether a proper motion for a new trial was pending in the court below when the appeal was taken, where the motion is not in the record. *p. 437.*

SAME.—*Verdict.*—*Interrogatories.*—Every reasonable presumption is indulged in favor of the general verdict, and it must stand unless there is an irreconcilable conflict between it and the special answers to interrogatories propounded to the jury. *pp. 441, 442.*

MASTER AND SERVANT. — *Negligence. —- Verdict. — Interrogatories to Jury.*—In an action against a stone company for the death of plaintiff's intestate, the complaint alleged that deceased was employed to fasten hooks attached to a traveling derrick for the purpose of moving the stone; that three months prior to the accident the defendant had negligently placed a very large stone so that each end rested on two small stones placed on loose, new-made dirt. The large stone fell and killed deceased a few minutes after he had removed a smaller stone which was near to but in no way connected with the larger one. Answers to interrogatories propounded to the jury stated that the loose new-made dirt caused the stone to fall; that the condition of the ground where the stone stood was latent, so that a man of ordinary prudence could not have discovered it, and its condition was unknown to decedent. *Held,* that the special answers are not in irreconcilable conflict with the general verdict in favor of plaintiff. *pp. 437-441.*

From the Lawrence Circuit Court.    *Reversed.*

*J. R. East* and *J. E. Boruff,* for appellant.

*M. F. Dunn,* for appellee.

ROBINSON, J.—This case has twice before been appealed. *Salem-Bedford Stone Co.* v. *Hobbs,* 11 Ind. App. 27;

*Salem-Bedford Stone Co.* v. *Hobbs,* 144 Ind. 146. Upon the first appeal the judgment against the company was reversed because the evidence did not sustain the verdict, and a new trial was ordered with leave to amend the complaint. The complaint was amended, and another trial resulted in a verdict and judgment against the company, and, upon appeal to the Supreme Court, the judgment was reversed because of the insufficiency of the second paragraph of complaint. The complaint was again amended, and a trial resulted in a general verdict for appellant, with answers to interrogatories. Judgment was rendered in appellee's favor upon these special answers, notwithstanding the general verdict, and this action of the court is the only question presented.

It is argued by appellee's counsel that this appeal was improperly taken, as the record shows a motion for a new trial pending in the court below undisposed of. In the original record filed, immediately following the special interrogatories and answers, is this entry: "Defendant also asks leave to file its motion for a new trial of this cause." But no motion is in the transcript. A writ of *certiorari* was asked directing the clerk, among other things, to embrace in the transcript a copy of the motion for a new trial. In the return to this writ the clerk certifies that, on a date named, "defendant now files its motion for a new trial of this cause." But the motion itself is not set out. We have no means of knowing whether a proper motion for a new trial was filed in the trial court, except from the motion itself. Besides, no error has been predicated upon the court's ruling upon any motion for a new trial.

The amended complaint avers that appellee used in its stone-yard a traveling derrick, operated upon a tramway and used for lifting heavy stone; that decedent was an employe known as a "hooker", whose duties were to fasten hooks attached to the traveling derrick to blocks of stone, to remove them; about three months prior to the accident, appellee had negligently placed a large stone nine feet long, five feet wide,

and twenty inches thick on its edge, so that each end rested on two small stones, smooth on top, but irregular in shape and oval on the bottom, and were placed in loose, new-made dirt in such a manner that the large stone was liable to fall at any time; "that the place around said long stone, by reason of such dirt being new-made and loose about it, was dangerous and unsafe for such employes to work, which facts, the condition of said long stone, the condition of said loose and new-made earth, the liability of the stone falling·by reason of said loose dirt, the irregular and oval shape of the two small stones, and dangerous condition of said large stone, with its liability to fall over and injure its employes, and that the place around and about it was dangerous to employes,—were all well known to the defendant" at the time of the injury, and for three months before; that decedent was at all times ignorant of the facts as to such loose dirt, the irregular and oval shape of the small stones, the danger of the large stone falling, or that the place about the stone was dangerous for any reason; that, had the small stones been smooth on the bottom and the dirt solid, the large stone would have remained standing; that the oval and irregular shape of the small stones could not be seen by decedent because of their being buried in the ground; that the two small stones were about one foot thick, and about six inches were buried in the ground; that the top of each was smooth, indicating that they were square, and fitted for the purpose of safely supporting the large stone; that for a long time prior to the accident, appellee had negligently failed to inspect these stones, or loose dirt under them, and, had it done so, could readily have seen that the large stone so situated was in danger of falling, and that the dirt under the same was liable to give away; that decedent, while in the line of his duty and while obeying an order "to hitch onto a stone near by," and without any knowledge of the dangerous condition of the stone, or of the loose dirt, or that the place was unsafe, or the liability of the stone to fall upon him, or the

shape of the small stones, and being unable to observe such conditions and the condition of the earth beneath the stone, and while his face was turned away from such long and small stones, and while obeying such order, and exercising due care, the large stone, by reason of the shape of the small stones and loose earth, and without any fault on his part, suddenly fell upon him, producing injuries from which he died; that the risk of the stone falling, by reason of the irregular shape of the small stones and the loose earth, was not at any time assumed by the decedent by his employment; "and the plaintiff charges that the deceased, James F. Hobbs, received his injury and death solely on account of the negligence of the defendant in so placing such a long stone upon two smaller stones in such new-made and loose dirt, and allowing the same to be hidden from the view of its employes, without any fault on the part of said James F. Hobbs, whatever, and that said deceased did not in any manner assume the risk of the danger from which he was injured and killed."

The jury, in answer to interrogatories, say that appellant's decedent did not have an equal opportunity of seeing the condition of the soil under the tramway with appellee, and that he could not, by looking and by the exercise of his other senses, have seen the condition of the soil as to whether it was loose or compact; that he had worked in the mill-yard, covering about two acres, about eight months; that he had worked in and about the tramway at a point near where he was killed, about six weeks; that he assisted in building and putting in the foundation for the bents of the tramway; that at the time of the accident, about 2 o'clock in the afternoon, he was in possession of a sound sense of hearing and sight; that he assisted in removing the stone which was about eight feet long, three feet wide, and one to two feet thick, from in front of the stone that fell upon him, which was about three or four feet away. The stone that fell upon decedent was about nine feet long, five feet high, and one foot to three feet thick, was standing on "made earth," on an incline; and

rested upon two stones about two feet square, smooth on two sides, one smooth surface of each being on the ground, and the other supporting the stone that fell, and had been in that position two or three months; that he made no examination of the earth or of the stones, nor did he place any props about the stone that fell upon him after he assisted in moving the stone from in front of the stone that fell; and that there was nothing to prevent him from seeing the character and condition of the soil near the block that fell after the block in front had been removed, if he had looked, and nothing to prevent him from seeing that the stone that fell was on an incline; that he could have seen the size and dimensions of the stone that fell upon him had he looked; that the foreman gave the head hooker, Owens, in the hearing and presence of decedent, no warning to be careful or on the lookout; that the earth at the point where the stone stood was loose-made earth, and decedent had no knowledge that it was loose-made earth; that the condition of the ground at the point where the stone stood was latent and hidden, which a man of ordinary prudence could not have discovered; that he did not exercise his senses of sight and touch before and at the time of the accident to discover the condition of the stone that fell upon him; that he could not have seen the stone was unsupported had he looked; that the foreman did not order decedent to remove the stone from in front of the stone that fell; that the removal of that stone did not weaken the support of the stone that fell, nor have anything to do with its falling; that loose earth caused the stone to fall; that the stone which fell could not have fallen on decedent as then situate unless the stone in front had been removed; that appellee removed no props from in front of the stone that fell, and that it fell five or ten minutes after the stone in front was removed; that decedent was not selecting his own manner of work when injured; that he stepped in front of the stone which fell without any command from any one given at the time; that he had no specific command from the foreman

to remove the stone that was removed; that he had no specific order from the foreman or appellee as to the manner in which he was to remove the stone; Owens, the chief hooker, ordered decedent to remove the particular stone; that decedent could have done the work he was doing when injured without going in front of the stone that fell; neither appellee nor appellee's foreman knew that the stone had been removed from in front of the stone that fell, before the accident; that decedent was supplied with pick and tools with which to make dog holes in the stone to be moved, and was supplied with tools whereby he could have discovered the condition of the earth.

Upon the former appeal, the Supreme Court held that: "Where the facts set forth in the pleading strongly tend to show that the danger from which the injury complained of resulted was a known incident to the service, the complaint cannot be made good without a denial of the assumption of the risk in the complaint or a denial that it was a known incident to the service in which the servant was engaged when injured, if the facts and circumstances stated do not necessarily imply such denial." (144 Ind. 146.)

By the general verdict, the jury found that appellant's decedent was guiltless of contributory negligence; that appellee was negligent; that appellee had knowledge of the dangerous condition of the stone, knew of the loose dirt beneath the stone, its liability to fall by reason of the new-made earth; that the place in and about the stone was dangerous to employes; and that these facts were unknown to decedent, and that he did not assume the risk.

It is a well established rule in this State that a general verdict is presumed to have been rendered upon the substantial merits of all controverted matters, and every reasonable presumption will be indulged in favor of its correctness. Nothing is presumed in favor of special answers. They must not be contradictory, or inconsistent with each other, or ambiguous, because if they are to destroy the general verdict

they must do so by their own inherent clearness and strength. If on any supposed hypothesis under the issues, the answers can be reconciled with the general verdict, it must stand. If an irreconcilable conflict between the answers and general verdict can be avoided by taking all the special answers together, and adding to them any other fact that might have been proved under the issues, this must be done. See *Sponhaur* v. *Malloy*, 21 Ind. App. 287; *Kirkpatrick* v. *Reeves*, 121 Ind. 280; *Heltonville Mfg. Co.* v. *Fields*, 138 Ind. 58; *Shuck* v. *State*, 136 Ind. 63; *Chicago, etc., R. Co.* v. *Ostrander*, 116 Ind. 259; *Smith* v. *Heller*, 119 Ind. 212; *Fitzmaurice* v. *Puterbaugh*, 17 Ind. App. 318; *Gates* v. *Scott*, 123 Ind. 459; *Vance* v. *City of Franklin*, 4 Ind. App. 515; *Matchett* v. *Cincinnati, etc., R. Co.*, 132 Ind. 334; *Citizens, etc., R. Co.* v. *Hoop*, ante 78; *Consolidated Stone Co.* v. *Summit*, 152 Ind. 297. Under the above rules, we are unable to say that the facts found in answer to the special interrogatories are in irreconcilable conflict with the general verdict. The jury say that this earth at the point where the stone stood was new-made earth; that decedent did not know this fact; that the condition of the ground was latent and hidden, and that a man of ordinary prudence could not have discovered it. And the general verdict finds that decedent did not know, and could not have known by the exercise of ordinary care, the risks to which this loose earth exposed him, and that he did not assume the risk and hazard on account of it. There is no finding by the jury that the yard under the stones was of loose new-made earth. The only loose earth disclosed by the answers to interrogatories is that beneath the particular stone which fell. The issue tendered by the second paragraph of complaint—and the general verdict may have been based upon this paragraph—was that the loose new-made earth was beneath the particular stone, and not that the whole yard was of such earth. It might have been proved, under the issues made by this paragraph, that the stone was resting on new-made and loose

earth which was different from the rest of the yard. We can not indulge the presumption that the whole yard was of new-made earth. We have nothing to do with what the evidence may have shown in that respect. Special answers must control the general verdict by virtue of their own inherent strength and unaided by any presumption. Taking the issue tendered by the second paragraph of complaint, and the findings of the jury upon the location of the loose earth, an explanation is found for other answers, to the effect that decedent by the exercise of his senses could not have seen the condition of the soil. And keeping these facts in view, the finding of the jury that there was nothing to prevent decedent from seeing the character of and condition of the soil *near* the block that fell after the block in front had been removed, if he had looked, is not necessarily inconsistent with the general verdict which found decedent free from contributory negligence. There is no showing that the stone which fell was supported on either side before or after the other stone was removed. It is shown that no props were removed. It may be said it is improbable that the stone should stand in that position from two to three months, and then fall, when no supports had been taken from it, but we cannot say that such would be impossible. It is not shown that anything whatever was done to this stone immediately before it fell, but, so far as the answers show, the sole cause of its falling was the new-made earth beneath it.

The answers do not show that there was anything in the appearance of the stone that would suggest danger. Its condition had not been changed, no props had been taken away from it. There may have been other safe ways to do the work, but it is not shown that there was any apparent danger in doing it the way it was done. The only danger came from the concealed loose earth, of which the general verdict finds decedent was ignorant. It is not shown that there was anything to suggest to decedent that the earth beneath the stone was new-made earth. He was not bound to make any exam-

ination for latent defects, unless something suggested the existence of such defects. The jury say that the loose earth was latent and hidden, and could not have been seen by an ordinarily prudent person. The jury say that the stone that fell was standing "on an incline east" before the other stone was removed. But the answers fail to show whether that fact is favorable or otherwise to decedent, because it is not shown by the answers whether the stone fell east or west.

It is argued that if there was a place of danger decedent assisted in making it, by assisting in removing a stone from in front of the stone that fell. The jury find that the stone that was removed was three or four feet from the stone that fell. It does not appear from the answers whether this means that the stone that was removed was three or four feet from the other stone before it was removed, or whether it was that distance away after it was removed. The evidence has not been brought into the record, and the answers do not show that the stone that was removed was immediately in front of the other. From the answers we take it to be the fact that they were not resting against each other, for the stone that fell did not fall until five or ten minutes after the other stone was removed, and the jury say that the removal of this stone did not weaken the support of the other stone, and had nothing to do with the falling of the stone that fell and caused the death. They expressly find that loose earth caused the stone to fall. It is true it is found that the stone could not have fallen on decedent as then situate, unless the stone in front had been removed. This is not necessarily a finding that the removal of the stone created the place of danger, nor is it necessarily inconsistent with the finding that the removal of this stone had nothing to do with the falling of the stone that fell.

When we take the fact that, under the issues tendered by the second paragraph of complaint, the only loose earth was that beneath the particular stone, we cannot say that the conduct of decedent, as disclosed by the answers, shows con-

tributory negligence. Could inferences be drawn from some of the facts found, it might be concluded that the whole yard was of loose earth, but such inferences cannot be drawn to aid the special answers. The jury has not said that the whole yard was of loose earth, but it has said that the earth beneath the particular stone was loose earth. In that particular there is no conflict between the general verdict and special answers. And from the answers we must say that this hidden, loose earth was the proximate cause of the injury. Whether the evidence sustains these answers we have nothing to do. The special answers come to us as facts, and the only question is whether such facts and the general verdict are in irreconcilable conflict. Taking the special answers as a whole, we are unable to say that judgment should rest upon them, notwithstanding the general verdict. Judgment reversed.